ABNER C. HARDING, Plaintiff in Error, v. SAMUEL BUTTS, Defendant in Error—Error to Warren—and BLAKELEY PILKINGTON et al., Appellants, v. RUFUS FORD, Appellee.

#### APPEAL FROM BUREAU.

The ninth section of the twenty-fourth chapter of the revised statutes, title "Conveyances," which provides that a person having color of title, etc., to vacant and unoccupied land, who shall pay taxes thereon for seven successive years, shall be deemed to be the legal owner, etc., of said land, declared to be unconstitutional, it not being a provision acting as a limitation, but as absolutely transferring the land of one person to another, by declaring a forfeiture of estates for the non-payment of taxes.

THIS was an action of ejectment, brought by Harding against Butts, for E. half S. E. 20, 11 N., 3 W., in Warren county. Declaration filed October term, 1853. Plea not guilty. At April term, 1853, jury waived, and trial by court, and judgment rendered *pro forma* for defendant.

Bill of exceptions shows: Defendant admitted possession, and that the premises sued for were vacant and unoccupied until 1852.

The plaintiff then offered in evidence a deed, in due form, duly acknowledged, made by the auditor, conveying said land to M. Myers, dated 21st of October, 1835.

Also, a deed conveying the same land to John Fleming, made by M. Myers and Charlotte Myers, his wife, dated June 6, 1836, properly acknowledged.

Also, the will of John Fleming, with the probate thereof, and certificates and letters of administration attached, date of

probate being 23d of June, 1837. The language of the will, so far as relates to the point in controversy, is as follows:

"I give, demise and bequeath unto my executors, hereinafter named, and the survivor and survivors of them, all the real estate and personal property of which I shall be seized, or to which I shall be in any way entitled, at the time of my decease, with full power and authority to sell said estate or property, or any part thereof, and to reinvest the same in such manner and mode as my said executors, their survivor or survivors, shall deem fit and expedient upon the trusts," etc.

The will then named Christopher N. Kiersted, Edward W. Dunham, and the sons of the testator, John and William, as his executors. The letters attached to the said will show, that to John A. Fleming and William H. Fleming, the execution of said will was granted by the surrogate of the city of New York on the day of probate.

The plaintiff also offered in evidence the deposition of John A. Fleming, who swears that he is a son of John Fleming, and that his name is John A. Fleming; that John Fleming died in 1837, leaving ten children, named John A., William H., and eight others, none of whom bear the name of John or William; that Kiersted and Dunham declined to qualify and to act as executors of John Fleming's will, and never acted as such; that he and his brother William H. qualified as such executors in 1837, and acted as such; that, by their agents, Moore, Morton & Co., as such executors, they paid the taxes for 1840, and 1841, and 1842 on said land; that he was authorized, by William, his brother, to sell the land, and sold the same to Charles Morton, and conveyed to Morton, with his brother, as executors; that the copy of said will offered in evidence is a true copy of the last will and testament of his father, John Fleming.

Also, the deed, dated 2d of September, 1844, made by John A. and William H. Fleming, executors of John Fleming, deceased, to Charles Morton, for the land in controversy, properly acknowledged.

Also, a deed, dated 30th of May, 1848, from Charles Morton to plaintiff, for said land, properly acknowledged, all of which evidence the court admitted, to which several rulings defendant excepted.

The plaintiff then offered in evidence the statement of Lucius Kingman (defendant admitting that said statement, by agreement of parties, was to be admitted and regarded as a deposition legally taken), and defendant then objected, but the court ruled that the statement should be received, and defendant excepted. Lucius Kingman stated, in said statement, that Charles Morton paid the taxes on the said land for

the year 1843, under a contract of purchsse from the executors of John Fleming; that he paid the taxes on said land, for the year 1844, for said Morton; that Morton paid the taxes assessed on said land in 1845, and also those assessed in 1846, and that all said payments were made claiming under the title derived from executors of Fleming.

The plaintiff then offered tax receipts for the taxes assessed on said land from collectors of Warren county, in the respective years, showing that the taxes of 1840 were paid by J. A. and W. H. Fleming; of 1841, by heirs of J. Fleming; of 1842, by heirs of J. Fleming; of 1843, by heirs of J. Fleming; of 1843, by C. Morton; of 1845, by C. Morton & Co.; of 1846, by C. Morton & Co.; and the collector's book for 1844, in which the name of L. Kingman, 20th of February, is placed opposite the said land in a column headed "*Collector's Return.*" The defendant then admitted that the taxes for 1844 on said land were paid by L. Kingman, and that the signatures of the different officers to the different tax receipts were genuine.

The court admitted in evidence the several tax receipts and collectors' books.

The defendant then admitted that he was in possession of the lot, claiming under a conveyance from one William Daugherty, dated 19th of March, 1852, to John H. Wheeler, conveying the said land, and said Daugherty, professing and claiming to be the brother and only heir of Daniel Daugherty, the patentee, to which was attached, as proof, the affidavit of Daniel Daugherty, nephew of said William Daugherty.

The plaintiff then offered in evidence the deposition of Daniel Daugherty, which the court admitted.

In said deposition, Daniel Daugherty, the nephew, swears that Wheeler, who got up the title, got all his information from him; that William Daugherty knew nothing about the right of his brother to land; that he knew Daniel Daugherty, the supposed soldier; that he was never, to his knowledge, in the war of 1812; that he only knew Daniel as a sailor; he was Daniel's nephew, and made the affidavit attached to deed.

This was all the plaintiff's evidence.

Defendant then offered, in evidence, the deposition of the auditor, to which plaintiff objected, but the court admitted the same, and plaintiff excepted; plaintiff waiving the failure to file affidavit, etc. The auditor testified as to the listing of the said land, and attached a diagram, showing that no change was made after 1828 in listing, and no division of classes made.

The defendant then offered the deeds, connecting the said William Daugherty title with one Hamilton Roney, deducing title to Roney by a regular chain of conveyances; and plaintiff

admitted that Roney was the landlord of the defendant; to the receipt of which deeds in evidence, plaintiff objected, but the court admitted the same in evidence.

It was admitted that all taxes for the last four years, and now due, have been paid by both plaintiff and said Roney.

Defendant then offered in evidence the assessment list of real estate in Warren county, for taxes for the year 1847, which list had upon it the following indorsement: "Assessor's Book of Real Estate for the year 1847, filed August 2d, 1847.

DANIEL McNIEL, *Clerk.*"

It was admitted that McNiel was, at that time, clerk of the county commissioners' court of said county, and that said indorsement and signature were in his handwriting.

This was all the evidence in the case.

Plaintiff moved for a new trial, court overruled the motion, and rendered judgment for defendant, to which several rulings plaintiff excepted.

The case of Pilkington *et al.* against Ford, was also an action of ejectment, brought in the circuit court of Bureau county, Ill., to recover possession of the north-east quarter of section 10, in township 15 north, and range 7 east, of the fourth principal meridian, and tried by the court.

The plaintiff, to maintain the issues on his part, gave in evidence:

A deed from the auditor of state to Joel Wright, dated April 18th, 1835, on tax sale of 1833, for taxes of 1832.

Deed from Joel Wright and wife to John Tilson, Jr., dated March 19th, 1835.

Deed from John Tilson, Jr., to Joseph W. Moulton, dated April 25th, 1835.

Deed from Joseph W. Moulton and wife to Charles F. Moulton *et al.*, dated November 18th, 1835.

Deed from Charles F. Moulton *et al.* to Lemuel Lamb and Thomas Dunlop, dated March 30th, 1838.

Deed from Lemuel Lamb, and Thomas Dunlop and wives, to Daniel H. Nevins and John Allstyne, dated March 18th, 1845.

Deed from David H. Nevins and John Allstyne to John J. Thomas, dated September 1st, 1845.

Deed from John J. Thomas and wife to Rufus Ford, the plaintiff below, dated September 13th, 1854.

All of the above deeds recited the land mentioned in plaintiff's declaration, and were admitted without objection.

The plaintiff proved the payment of taxes on said land by his grantor, John J. Thomas, for the years 1846, 1847, 1848, 1849, 1850, 1851, 1852 and 1853.

The defendant admitted the land to have been vacant and unoccupied during the several years that said taxes were

paid, and that they were in possession of said land at the commencement of this suit.

The defendants, to maintain the issues on their part, gave, in evidence, a certificate from the auditor of state, showing that the north-east quarter of section 10, in township 15 north, and of range 7 east, of the fourth principal meridian, were not listed for the years 1831, 1832 and 1833, which was admitted by agreement.

The plaintiff then admitted that the auditor's deed was not good as an absolute conveyance of title, but he offered it, in evidence, as color of title made in good faith.

The parties, by their counsel, restricted themselves to one question, and that was the construction of the ninth section of chapter twenty-four of the revised statutes, entitled "Conveyances."

The plaintiff claimed and contended that a person having color of title, made in good faith, to vacant and unoccupied land, and had paid all taxes legally assessed thereon for seven successive years, by virtue of said ninth section of chapter twenty-four of revised statutes, became the owner thereof, and that the land became his in fee simple.

The court decided the plaintiff was entitled to recover, to which decision the defendant excepted.

The defendants moved for a new trial, which motion was overruled by the court, and defendants excepted.

The appellants assign for error that the court rendered a judgment in favor of the plaintiff's, contrary to the law and the evidence.

O. H. Browing, C. Beckwith, and G. F. Harding, for Harding.

A. Williams and R. S. Blackwell, for Butts.

E. W. Hazard, for Pilkington and others.

Peters and Farwell, for Ford.

Scates, C. J. The same question is raised in each case. Plaintiffs rely for recovery upon color of title, made in good faith, to vacant and unoccupied land, with the payment of taxes for seven successive years, under the provisions of the ninth section of the act concerning conveyances, as contained in the revised statutes of 1845, page 104.

That section provides that, "whenever a person, having color of title, made in good faith, to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven successive

years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land, to the extent and according to the purport of his or her paper title." Persons taking, by purchase, devise or descent, may complete term of seven years by adding their own payments and time to their vendor, devisor or ancestor, so as to complete the period, with *proviso* that the person having a better paper title may defeat the title so provided, by paying the taxes assessed on the land for one or more years. The tenth section allows persons, under disabilities of infancy, insanity, imprisonment, coverture and absence, etc., to refund the taxes so paid, with interest, at twelve per cent. per annum, within three years after the removal of disabilities.

There is hardly a feature of an act of limitation discernible in these provisions, unless it be the saving of rights to infancy, etc. Stripped of this, and it stands a naked, bold provision for the transfer of the land of one to another, and his investiture of the paramount title thereof, as against the owner and all others, upon condition that he, having color of title thereto, made in good faith, shall pay all taxes legally assessed thereon for seven successive years.

We are unable to find warrant in the constitution for such an exercise of legislative power. The legislature may make the public dues a lien upon property, and subject it to sale for their payment, and authorize the state to become the purchaser, in default of others; but the power to declare a forfeiture of estates for non-payment of taxes, or make their payment for one or more years evidence of paramount title, as between contesting claimants to land, is one of altogether questionable authority. The chance given the owner of the " better paper title" to defeat his weaker adversary, by paying the taxes one year in seven, was barely a chance in a race to the collector, who was not, in 1839, when this act passed, authorized to receive but one payment of taxes. He was, afterward, directed to receive taxes from all claimants, and then could suffer the penalty for negligence alone. But this could not legalize such a legislative transfer of property, from the owner of " a better paper title" to the " person having color of title" only, whether in the sense of a sale on these terms, without judgment, advertisement or biddings, or in that of a judicial determination of right between adverse claimants. But the provision is not a revenue measure for the collection of taxes, and could not be sustained as such, if it were. As originally passed, it was " An act to quiet possessions and confirm titles to land." The first section (see Acts 1838–9, p. 266) was an act of limitation, and has been sustained as an act to quiet possession (*Woodward* v. *Blan-*

*chard*, 16 Ill. R. 424), as it operated through and upon the possession, protecting that against the entry or action of the true owner, if under no disability, after the lapse of seven years; and against those under disability, if they did not commence their action within three years after removal of disability.

Now statutes of limitation invariably work upon the basis of a possession. *Wah* v. *Sherman et al.*, 8 Serg. and Raw. R. 359–369 (overruling *Parish et al.* v. *Stevens*, 3 Serg. and Raw. R. 298); *Cranmer* v. *Hall*, 4 Watts and Serg. R. 36; *Bigler* v. *Karns*, ibid. 138; *McCall* v. *Himebaugh*, ibid. 164; *Bayard* v. *Inglis*, 5 ibid. 465, and the instances of exception are very few, and confined to special cases. The prototype is found in the common law prescription, which, from lapse of time, raised the presumption of right, title, and even of grant or conveyances, when necessary to sustain it.

Although such statutes, in phraseology, only bar the right of action or remedy, yet, in effect, they confer on the possessor a right of property. Angell on Limit. p. 18. But statutes of limitation may not only bar the remedy, but also confer a corresponding right on the opposite party, as a direct consequence and effect. *Beckford et al.* v. *Wade*, 17 Ves. Jr. R. 87, and note *a*. And this distinction has been taken and sustained as constitutional. *Townsend* v. *Jamison*, 9 How. U. S. R. 413, 416–420; *Stokes* v. *Berry*, 2 Salk. R. 421; *Reading* v. *Royston*, ibid. 423, and note *a*; *Fisher* v. *Prosser*, Cowp. R. 218.

I take no exception to the declaration in the act, that a right shall arise upon a fixed term of possession, and that all actions shall be barred from disturbing it. The objection is that the act attempts to act upon the paper titles, abstractly, without regard to a possessing title, which ever has been the title intended to be aided and protected by such statutes. Even the statute of Jamaica, which was cited on the argument as an instance of acting upon, declaring and confirming the right absolutely, did not so act, simply upon the right, but through the possessory title. 17 Ves. Jr. R. 87 and note *a*. So the construction of the act of Pennsylvania of 1804, in relation to sale of unseated lands for taxes, although literally dispensing with possession, was construed as intended only to operate from the time possession was taken.

It is true that, by subsequent act of 1824, the limitation is expressly made to run from the day of sale for taxes of unseated or vacant land, but the act provides that an action shall lie against the purchaser, though not in possession. *Robb* v. *Bowen*, 9 Penn. State R. 71. Thus the principle is fully recognized, that before an owner can be barred of his

right or remedy, a complete right of action must exist. It may be the legislature can change all real actions into personal ones, and require them to be brought against the claimant of land, upon his setting up or making claim, within a given period, or that all right and remedy shall be lost. It seems to have been carried quite to this extent in the case of *Robb* v. Bowen. The case is distinguishable from *Shaenburger* v. *Becht*, 5 Watts R. 194. The statute provided for a trial or hearing of conflicting claims for patents, before a board of property. The losing party was required to bring his action within six months, if dissatisfied with their decision. This he was authorized to do, whether the opposite party was in possession or not. It was equivalent to an appeal. Ibid. 196.

We have been referred to another act of limitation in New York, as strongly analogous, and in support of the constitutionality of the ninth section under consideration. But like the Pennsylvania acts referred to, is special, peculiar, and distinguishable from this act of ours, and from general acts of limitations.

The act was to settle disputes to the military lands in the county of Onondaga. For that purpose a commission, in the nature of an arbitration, was provided. The award was final, unless the party filed a dissent within two years, *and* if not in possession, bring his action within three years after the award. Here again it is perceptible that it is in the nature of an appeal from a decision that will otherwise be final, though it is not directly from the award, but partly from it by filing a dissent, and partly independent, by bringing a separate action. Yet this action need not be brought unless the opposite party is in possession. *Jackson* v. *Huntley*, 5 John. R. 59; *Jackson* v. *McKee*, 8 ibid. 429; *Jackson* v. *Root*, 18 ibid. 75; *Jackson* v. *Lamphire*, 3 Pet. R. 287. For the purposes of settling the rights of the parties under the act, the party dissenting was to be *deemed to be in possession*, and the other party must bring his suit against him. Take it altogether, and such was a certain prescribed mode of trial, to end a particular class of disputed titles. Nothing, I conceive, can be drawn therefrom, in aid of such a general provision, not to bar remedies, or try or end disputes and conflicting claims of titles; but rather for the transfer of title, upon performance of certain conditions without notice, hearing or trial, on behalf of the owner of the better paper title.

If the legislature may do this, I am unable to see why they may not transfer my property upon the performance of other prescribed conditions or required acts.

They may not give my property to the first man who will pay the taxes upon it, with or without my default. Naked

Harding *v.* Butts et al.

powers must be strictly executed according to prescribed powers and modes. Such are sales for the non-payment of taxes. The party claiming is not deemed to be in possession for the purposes of a suit, nor will an action lie for making claim to the land. There is no apparent remedy by action against this adversary, claimant and tax-payer; and yet the paramount title may be overthrown and the land transferred, to one "deemed and adjudged to be the legal owner of said vacant and occupied lands, according to the *purport* of his or her paper title."

We find no act of legislation like this, nor any decision strongly analogous. The strongest is the act of 1824, of Pennsylvania, and the case of *Robb* v. *Bowen;* but that act authorized an action against the purchaser, without possession. We need not say, whether the legislature of Illinois could pass such an act as that of Pennsylvania of 1824, but we have been called on in this case, and have been compelled to hold that there is no power under the constitution to provide for the transfer of title from one to another claimant, upon the conditions and under the circumstances in the act mentioned. We need not, and will not discuss the statutes of limitations, which operate as bars for protection of possession. Nor need we anticipate what construction may be yet put upon some, which do not literally imply a possession. In *Pillow* v. *Roberts*, 13 How. U. S. R. 477, the court expressly waive the consideration of the point, whether the legislature of Arkansas intended that the action should be barred in five years, where the purchaser at the tax sale was not in possession. In that case he had had five years' possession, which was sufficient, without resort to the literal terms of the act.

The many cases referred to on the argument, were cases of actual possession, and which can therefore throw little light upon this as a question of power.

Judgment affirmed in the first named case, and reversed in the other, and the cause remanded.