JAMES NEWLAND, Appellant, *v.* AUGUSTUS C. MARSH, Appellee.

APPEAL FROM ADAMS.

ELIZA JOHNSON, Appellant, *v.* JOHN BOSTOCK, Appellee.

APPEAL FROM BROWN.

BENJAMIN GITTINGS, Plaintiff in Error, *v.* JOHN STEARNS, Defendant in Error.

ERROR TO HANCOCK.

The second section of the act approved March 2, 1839, entitled "An Act to quiet possessions and confirm titles to lands," is a limitation law barring the action of ejectment; and the party in whose favor the limitation has run, may invoke its aid.

The statute commences to run when the party having color of title, begins payment of the series of taxes; and the bar is perfected, when the payment of that series of taxes, (for seven years,) under color of title, is complete. And the party may avail himself of the bar, whether he is sued whilst in or out of possession.

It would seem that possession of the land during the whole or any part of the seven years, was unimportant in aid of the bar.

IN the case of *Newland* v. *Marsh*, the following statement, shows the facts of the case:

This was an action of ejectment brought by the appellee against the appellant, to recover the possession of the N. W. 12, 2 N. 6 W., in Adams county.

The declaration was served October 27, 1856. Plea of "not guilty" filed November 10, 1856.

By agreement, a jury was dispensed with, and the case submitted to the court for trial.

On the trial, the plaintiff below gave in evidence a patent from the United States to George Howell, for the land in con-

troversy, dated May 13, 1818, and connected himself with said patent by a series of deeds, the last of which was a deed from William S. Hopkins and others, to him, the said plaintiff, dated February 14, 1856. It was admitted that the defendant below was in possession of the land at the commencement of the suit, and the plaintiff rested his case.

The defendant below, to maintain the issue on his part, then produced, and read in evidence, a deed from James T. B. Stapp, auditor of public accounts, to Claiborne B. Berry, for the land in controversy, dated March 28, 1834, and which was issued upon sale of said land, made on the 7th January, 1832, for the tax of 1831.

The defendant then connected himself with said auditor's deed by a series of deeds, the last of which was a deed from Edwin M. Lewis, George Philler and Benjamin B. Comegys, to said defendant for said land, dated April 4, 1854.

Defendant did not rely upon said deeds as evidence of paramount title, but only as color of title under the statute of limitations of 1839.

Defendant then proved that his grantors, whilst claiming to be the owners of said land, had paid all taxes assessed thereon for the years 1841, 1842, 1843, 1844, 1845, 1846, 1847, 1848, 1849, 1850, 1851, 1852 and 1853, and that he, defendant, had paid all taxes assessed on said land for the years 1854, 1855 and 1856.

He admitted that his grantors, whilst they so claimed to be the owners of said land, and paid taxes thereon, were non-residents of the State of Illinois.

Defendant further proved that said land was vacant and unoccupied until the summer of 1854, when he took possession of it, claiming to be the owner thereof under his aforesaid title, and had ever since continued in possession, claiming to be the owner thereof, and that between the time of taking possession and the commencement of this suit, he had enclosed and put under cultivation the whole of said land.

This was all the evidence in the case, and thereupon the court decided that said possession was not protected by the statute of limitations of 1839, found the issue for the plaintiff below, and rendered judgment against the said defendant below; and said defendant excepted.

The appellant, who was defendant below, now assigns for error the above mentioned decision of the court, and the finding and judgment thereon.

This case was heard before SIBLEY, Judge.

The case of *Johnson* v. *Bostock* presents the following state of facts:

This was an action of ejectment, brought by Bostock against Johnson, in the Brown Circuit Court, to recover the South half of the S. W. quarter of Section 28, Township 1 South, Range 4 West.

A jury being waived, the case was tried by the court, WALKER, Justice, presiding. The court found for Bostock, and rendered judgment in his favor against Johnson, at the September term thereof, 1857; from which judgment Johnson appealed to this court.

The suit was commenced April 21, 1857. The declaration is in the usual form. Johnson plead the general issue. Upon the trial below, Bostock proved regular conveyances, in due form, for the land in question, to himself, originating with a patent from the United States, dated January 1, 1819, and rested.

Johnson, for the purpose of showing claim and color of title to said land, made in good faith, proved regular conveyances in due form for the same to himself, originating with a deed from the sheriff of Brown county, dated July 5, 1844, and made in pursuance of a sale of said land in 1841 for the taxes assessed thereon for 1840, and ending with a deed to himself, dated January 13, 1854.

He also proved that said land was vacant and unoccupied until the latter part of February or first of March, 1854, when he went into actual possession of the same, and has continued in such possession of the same ever since, claiming the same as his own, under and by virtue of said conveyance to him.

He also proved that taxes had been assessed upon said land each year from 1844 to 1856, both inclusive. That the persons through whom he claimed said land by said conveyances had regularly paid all of said taxes from 1844 to 1853, both inclusive, and that he himself had regularly paid all such taxes for the years 1854, 1855 and 1856: all being paid in due time, and before the commencement of this suit.

The foregoing is the substance and effect of the testimony below, as appears from the bill of exceptions filed in the case.

Upon the finding of the court below being announced, Johnson moved for a new trial, for the following reasons:

1st.    Because said finding was contrary to the evidence in the case; and

2nd.    Because the same was contrary to the law of the case.

But the court overruled said motion, and Johnson excepted.

The court thereupon rendered its final judgment in the cause, which is in the usual form.

To which opinion and decision of the court in rendering said

judgment, Johnson at the time excepted; and he now assigns for error:

1st. The said finding of the issue below in favor of said Bostock.

2nd. The overruling of his, the said Johnson's, said motion for a new trial.

3rd. The rendering of said final judgment against said Johnson.

4th. The rendering of said final judgment in favor of said Bostock, instead of in favor of said Johnson.

In the case of *Gittings* v. *Stearns,* the record shows the following facts:

This was an action of ejectment brought by the defendant in error, against the plaintiff in error, to recover the possession of the S.W. 29, 7 N., 5 W., in Hancock county.

The declaration was served February 23, 1855. Plea of "not guilty" filed March 15, 1855.

On the trial, the plaintiff below gave in evidence the exemplification of a patent from the United States, to Asa Robbins, for the land in controversy, said patent having been issued May 8, 1818, and the exemplification which was given in evidence having been certified October 18, 1855; also a deed from said Asa Robbins to Wm. Hobbs, Jr., dated March 9, 1854, for said land, and deduced title in himself to said land, by a regular succession of conveyances therefor, from the said Hobbs to him, said plaintiff.

It was admitted that the defendant below was in possession of the land at the commencement of this suit, and the plaintiff below rested his case.

The defendant, to maintain the issue on his part, produced and read in evidence a deed from James T. B. Stapp, Auditor of Public Accounts of the State of Illinois, to Ninian Edwards, for said quarter section of land, said deed bearing date January 23, 1832, and having been issued in pursuance of a sale made of said land, by said auditor, on the 9th day of January, 1830, for the tax of 1829.

Defendant below then offered, and read in evidence, successive deeds for said land, by which the title to said land was regularly transmitted from the said Ninian Edwards to him, the said defendant, the deed to said defendant for said land being dated July 6, 1849.

Defendant did not rely upon said deeds as evidence of paramount title, but only as color of title under the statute of limitations of 1839.

Defendant then proved that he and those under whom he claimed had paid all taxes assessed upon said land for the years

1844, 1845, 1846, 1847, 1848, 1849, 1850, 1851, 1852, 1853, 1854, and 1855, and that said land was vacant and unoccupied until the spring of 1852, when he took possession of it, claiming to be the owner thereof, under his aforesaid title, enclosed said land and put it under cultivation, and had continued in possession thereof ever since, claiming to be the owner.

This was all the evidence in the case; and thereupon the court, SIBLEY, Judge, decided that said possession was not protected by the statute of limitations of 1839, found the issue for the plaintiff below, and rendered judgment against the said defendant below; and the defendant excepted.

The plaintiff in error, who was defendant below, now assigns for error the above mentioned decision of the court, and the finding and judgment thereon.

By agreement the case was tried by the court below, without the intervention of a jury.

BROWNING & BUSHNELL, for Newland and Marsh.

WHEAT & GROVER, for Johnson.

WILLIAMS, GRIMSHAW & WILLIAMS, with whom was E. W. HAZZARD, for Appellees and Defendant in Error.

SKINNER, J. The defendants in these three cases showed color of title made in good faith, and payment of taxes under such title for seven successive years, whilst the land was vacant and unoccupied, and were served with declaration afterwards, and when in possession. They seek to defend their possessions, *first*, upon the ground that by force of the second section of the act of the legislature, approved March 2, 1839, and entitled "*An Act to quiet possessions and confirm titles to lands*," they are seized in fee simple of the land; and, *second*, upon the ground that, treating this section as a limitation of the remedy, the plaintiffs' actions are barred.

We will examine these positions in connection:

The first section of this act provides: "That, hereafter, every person in the actual possession of land or tenements, under claim or color of title made in good faith, and who shall, for seven successive years after the passage of this act, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such land or tenements, shall be held and adjudged the legal owner of such land or tenements, to the extent and according to the purport of his or her paper title."

The second section provides that, "Hereafter, whenever any person having color of title, made in good faith, to vacant and

Newland v. Marsh, Johnson v. Bostock, Gittings v. Stearns.

unoccupied land, shall, after the passage of this act, pay all taxes legally assessed thereon, for seven successive years, he or she shall be deemed and adjudged the legal owner of said vacant and unoccupied land, to the extent and according to the purport of his or her paper title."

The third section gives to owners under legal disability the right to avoid the forfeiture of their lands under the second section, by paying " to the person or persons who have paid the same," within three years after their legal disability is removed, " all taxes, with interest thereon at the rate of twelve per cent. per annum, that have been paid on such vacant and unoccupied land."

The first section of this act, notwithstanding the language used, has been uniformly treated by this court as a limitation law—a law barring the remedy. *Irving* v. *Brownell*, 11 Ill. R. 402 ; *Woodward* v. *Blanchard*, 16 Ill. R. 424 ; *McConnel* v. *Street*, 17 Ill. R. 253 ; *McClellan* v. *Kellogg*, ibid. 498.

In the case of *Harding* v. *Butts*, 18 Ill. 502, this court held that, under the second section of this act, color of title to, and payment of taxes for seven years on, vacant and unoccupied land, could not operate to vest in the party having the color of title and paying the taxes, the *title* to the land ; and that this section, if construed to effect such result, would be unconstitutional and void.

This decision, concurred in by the whole court, and having become a rule of property, we are now called upon to overrule. The importance of the question, as well on account of the principle, as the large amount of property involved, justifies a reexamination of the grounds of that decision.

The judicial department of the government, being ordained for the administration of the laws, under the sanctions of and in obedience to the mandates of the federal and State constitutions, and the limits upon the legislative power in them contained, will consider acts of the legislature in connection with those constitutions and their limitations, and give the force of *law* to acts of the legislature in so far, and in so far only, as they are within the competency of the law-making power.

And, although the courts will never pronounce acts of the legislature unconstitutional without mature reflection and clear conviction, yet, under no specious pretext or sophistical reasoning, can they rightfully avoid the high and imperative duty imposed, of declaring them void, whenever, in their enactment, the legislature assumes powers not within the scope of legislation, and withheld from it or reserved to another department, by the written constitutions of the country.

The constitution of this State declares that, " The powers of

the government shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." And prohibits each department from exercising any power confided to another. Const., Art. 2, Secs. 1, 2.

The legislative authority is vested in the General Assembly; the executive in the Governor; and the judicial in the courts. Const., Art. 3, Sec. 1; Art. 4, Sec. 1; Art. 5, Sec. 1.

The powers of government are thus wisely distributed among the three independent departments, and each is prohibited from exercising only such authority as is specially confided to it; thereby creating checks and balances indispensable, in a representative government, to the security of the people against usurpation and the preservation of their rights and institutions *in fact* as well as in *form*.

It is the province of the judiciary to declare what *is* the law, in any given case for judicial determination, and to enforce only *valid* enactments of the legislature.

An act, therefore, of the legislative department, notwithstanding the powers confided to it, when brought in question judicially, must, of necessity, be held void; otherwise, the natural tendency to the concentration of power in the most powerful branch of the government, would, in time, effect a silent, but sure revolution in our political system. The legislative department assuming, and being allowed to judge of the character and extent of its own powers, would soon become the *ex parte* arbiter of private rights, and the frequent dispenser of justice between citizen and citizen, unrestrained, and according to its own notions of right.

The people have wisely, by constitutional provisions, guarded against such consequences, and so long as these provisions are sacredly regarded and enforced, their rights of person and property will remain secure from aggression under color of authority.

The constitution of this State provides, that no freeman shall, " in any manner, be deprived of life, liberty, or property, but by the judgment of his peers or the law of the land."

These provisions—a part of our ancestors' *Magna Charta*—are embodied substantially into all, it is believed, of the constitutions of the States of the Union; and by uniform judicial interpretation, the words, " by judgment of his peers," means a trial by jury in the courts, according to the accustomed course of judicial proceedings; and the words, "law of the land," a trial in the courts according to such course of judicial proceedings.

The citizen cannot be deprived of his property by involuntary

divestiture of his right to it, or by such transfer of it to another, except by judgment of law; and the legislature, having no judicial power, cannot impart to their enactments the force of a judicial determination.

The legislative power extends only to the making of laws, and in its exercise, is limited and restrained by the paramount authority of the Federal and State constitutions. It cannot directly reach the property or vested rights of the citizen, by providing for their forfeiture or transfer to another, without trial and judgment in the courts; for to do so, would be the exercise of a power which belongs to another branch of the government, and is forbidden to the legislative. It is, however, said that these trials satisfy the requisitions of the constitution, and are all that is contemplated by the provisions alluded to. This is a fallacy too patent for special notice.

These ejectments are brought to try the title, or right of possession, to the lands in controversy, and the defendants cannot recover upon paramount title, *to be made and created in them by the judgments in these actions.* If they recover upon paramount title, it is because the court finds the title in them; not by virtue of anything in these actions, but because pre-existing facts, established, have conferred upon them the title.

Although the legislature cannot divest titles, and destroy vested rights, the same provisions alluded to, have existed, as constitutional law, for ages in the mother country, are adopted and re-asserted by us, and with them have gone, side by side, the various limitation laws of both countries. The ground, however, upon which they are held consistent with the paramount rule stated, is, that they apply to the remedy only, affording reasonable and adequate opportunity for enforcement of the right. In other words, if the law strikes at the right, and by its own force, or in connection with facts *aliunde*, in themselves immaterial, annihilates it, or confers the right upon another, the legislature exercises a judicial power, which it cannot do. But such is not the nature of limitation laws. Under them, the right remains after the bar of the action is complete, but without remedy of enforcement. "No law impairing the obligation of contracts, shall ever be made." Const. Ill., Art. 13, Sec. 17.

Whatever rights of property we have, held derivatively, are founded in and rest upon *contract,* by force of which, under the laws of society, we may hold, enjoy and protect what we thus have. And it matters not, in principle, whether the property rest in contract, executory or executed, in grant from an individual or from government, in action or possession—be in lands, rights or obligations—it is alike within the protection of this

clause, and inviolate. Yet the legislature may control the remedy for enforcement of these rights and duties, and for any invasion of them, of whatever character they may be, by providing a period within which the remedy shall be resorted to; but it cannot divest the right, or declare the grant or obligation null. The right or duty remains, notwithstanding the limitation of the remedy, and the party against whom the right is asserted, may waive the bar, and then the right or duty is enforced.

Although the remedy is barred, the right or duty continues, but without means of coercive enforcement, yet the party, voluntarily submitting to the remedy, or performing the obligation or duty, is concluded.

The debt barred, continues as a moral obligation or duty, which is sufficient consideration to sustain a new promise, to which the remedies of the law attach, as upon a new contract. *Keener* v. *Crull*, 19 Ill. R. 189; *Ayers* v. *Richards*, 12 Ill. R. 146. The right, therefore, is not annihilated by limitation of the remedy. And such is the principle under statutory provisions and equity rules, shutting out parties for *laches*, from asserting right or title against the innocent and vigilant. The law does not divest the right, but postpones or forbids the setting it up against the meritorious party only.

Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give to it the force of law, such construction will be adopted by the courts. Therefore, acts of the legislature, in terms retrospective, and which, literally interpreted, would invalidate and destroy vested rights, are upheld by giving them prospective operation only; for, applied to and operating upon future acts and transactions only, they are rules of property under and subject to which the citizen acquires property rights, and are obnoxious to no constitutional limitation; but as retroactive laws, they reach to and destroy *existing* rights, through force of the legislative will, without a hearing or judgment of law. So will acts of the legislature having elements of limitation, and capable of being so applied and administered, although the words are broad enough to and do, literally read, strike at the right itself, be construed to limit and control the remedy; for as such they are valid, but as weapons destructive of vested rights, they are void, and such force only will be given the acts as the legislature could impart to them.

The theory of limitation laws is, that they affect the remedy—limiting the period within which rights may be asserted or remedies resorted to — affording a time and opportunity of enforcing rights by legal remedies, and leaving the right untouched, but regulating or limiting the use of the remedy for

assertion of the right or recovery of the thing to which it relates. And upon no other ground can the second section of the act of 1839 be upheld and enforced, as within the limits of the legislative power.

The language : " Shall be held and adjudged the legal owner of such land to the extent, and according to the purport, of his or her paper title," is contained in the first as well as the second section of the act ; and the first section having been uniformly treated by this court as a limitation of the remedy, it would seem to follow that the second section may be so construed and enforced. But, treating the second section according to the literal import of the words, the effect is, that the title of the owner is taken from him and conferred upon another, by force of the acts of paying the taxes for the seven years under color of title, and such construction, we hold, would render this section null and void. *Bowman* v. *Middleton*, 1 Bay R. 252 ; *The Proprietors, etc.,* v. *Laboree,* 2 Greenleaf's R. 275 ; *Sheppard* v. *Johnson,* 2 Humphrey's R. 285 ; *The Governor* v. *Porter,* 5 ibid. 165 ; *Pearce* v. *Patton,* 7 B. Monroe R. 162 ; *Crenshaw* v. *The Slate River Company,* 6 Randolph R. 245 ; *The Regents, etc.,* v. *Williams,* 9 Gill & John. R. 365 ; *Harness* v. *The Chesapeake, etc.,* 1 Md. Ch. R. 248 ; *Brown v. Humel,* 6 Penn. R. 86 ; *De Chastellux* v. *Fairchild,* 15 Penn. R. 18 ; *Fletcher* v. *Peck,* 6 Cranch R. 87 ; *Doe ex dem. Gaines* v. *Buford,* 1 Dana R. 481 ; *The People* v. *The Board Supervisors, etc.,* 4 Barbour's S. C. R. 64 ; *Embury* v. *Conner,* 3 Comstock R. 511 ; *Varick* v. *Smith,* 5 Paige's Ch. R. 137 ; *Dash* v. *Van Kleeck,* 7 John. R. 477.

We hold this section to be a limitation law, barring the action, and nothing more, and it follows, therefore, that when the party in whose favor the limitation has run, is in a position to use it—is sued—he may invoke the law in bar of the action.

The statute commences to run when the party having color of title begins payment of the series of taxes, and the bar is perfected when the payment of that series of taxes, under the color of title, is complete.

It does not commence running only from possession taken of the land, but from the time of the concurrence of the two things—the color of title and payment of taxes—and has performed its office, when the color of title and payment of taxes have gone together for the period of limitation ; and it is the same to the party availing himself of the bar whether he is sued whilst in or out of possession. The statute is anomalous, and, to give it effect, must be interpreted consistent with the analogies of limitation laws. The case of *Robb* v. *Bowen,* 9 Penn. R. 71, is consistent with this construction. The Penn-

sylvania law barred the remedy against the holder of the tax title in five years after the tax sale, and, like our law, possession in the defendant was not necessary to maintain ejectment; and the court held that the limitation commenced to run from the sale.

The judgments are reversed and the causes remanded.

BREESE, J. I concur in the above judgment.

*Judgments reversed.*