## PAPWORTH *v.* THE STATE.

1. There being, on the 26th day of September, 1879, a general law of force in this State, rendering lawful, in any county thereof, sales of domestic wines, in quantities of not less than one quart, by the manufacturers of the same (Acts of 1877, p. 33), and such wines being "intoxicating liquors," an act approved on the day above mentioned, which by its

terms undertook to "entirely prohibit the sale of spirituous or intoxicating liquors" within the limits of a designated county, was unconstitutional. As its effect would be to render penal, in that county, all sales of domestic wines, it was violative of that clause of the constitution prohibiting special legislation in any case for which provision has been made by an existing general law.

2. Such an act can not be held valid and constitutional in so far as it relates to sales of liquors other than domestic wines, or to sales of such wines by the manufacturers thereof in forbidden quantities, or to sales of the same by persons not manufacturers. This is true because so holding would not give effect to the real legislative intent, which apparently was to entirely prohibit, in the specified county, all sales of spirituous or intoxicating liquors, including domestic wines, no matter by whom, or in what quantities, the latter might be sold ; and it does not appear that the General Assembly designed or contemplated the passage of an act having a less comprehensive scope. LITTLE, J., dissenting.

Argued October 11, — Decided November 26, 1897.

Indictment for selling liquor. Before Judge Smith. Irwin superior court. June 15, 1897.

*Cutts & Lawson* and *Ryman & Kennedy*, for plaintiff in error. Tom Eason, solicitor-general, contra.

LUMPKIN, P. J. On the 27th of February, 1877, the General Assembly passed an act legalizing the sale of domestic wines, by the manufacturers thereof, in quantities of not less than one quart, anywhere in the State of Georgia. See Acts of 1877, p. 33. This act expressly declared that it should have the effect stated, notwithstanding the provisions embraced in a number of designated sections of the Code relating to unlawful sales of liquors, and notwithstanding "any provision, or provisions, of law requiring any license or oath, or other regulation or condition, prohibition, or penalty." It was therefore plainly the intention of the General Assembly, in enacting this statute, to place sales of domestic wines by the manufacturers thereof, in quantities of not less than one quart, upon the same footing as sales of other commodities, and to exempt such sales of such wines from the operation of all laws of force in this State regulating or prohibiting traffic in spirituous or intoxicating liquors. It will not be questioned that domestic wines are "intoxicating liquors," and the General Assembly therefore deliberately intended to put, within the limits indi-

cated, this class of intoxicants upon the "free list." The act with which we are now dealing was certainly a general law, and it follows that the General Assembly could not constitutionally vary its provisions in any locality in Georgia by special legislation. Nevertheless, while this act was in full force, the General Assembly, on September 26th, 1879, attempted to do this very thing by passing an act "to entirely prohibit the sale of spirituous or intoxicating liquors within the limits of Irwin county." Acts of 1878–9, p. 388. This latter act, in general and universal terms, declared that "the sale of all spirituous or intoxicating liquors are prohibited within the limits of Irwin county," and rendered any violation of its provisions a misdemeanor. The language of this act is too plain to admit of any doubt as to its meaning. It is not susceptible of more than one construction, and therefore must be taken to mean that any sale of domestic wine in Irwin county should be an indictable offense. But for the constitutional provision forbidding special legislation in a case for which provision has been made by an existing general law, no one could for an instant doubt that a sale of domestic wine, by any person, or in any quantity, in Irwin county, would be obnoxious to the provisions of this act, and would subject the offender to punishment; and it will not do to hold that merely because the General Assembly could not constitutionally pass such an act, it meant less than it unequivocally said in framing the terms of the act in question. As was remarked by Simmons, Justice (now Chief Justice), in the case of *Elliott* v. *State*, 91 *Ga.* 696, "the courts can not construct from a defective statute a law which the lawmaking body did not intend to enact, and which it can not be presumed it would have been willing to enact." In the present case, the General Assembly attempted, though it could not constitutionally accomplish its purpose, to put in force in Irwin county an entirely new policy as to the sale of domestic wines, and to put an end to all traffic in that class of intoxicants and all others. In other words, the scheme of the act was total prohibition for Irwin county; and, again quoting Justice Simmons, "it can not be assumed that the legislature would have been willing to enact the statute, if its effect would

be to establish a scheme of partial prohibition, and permit the traffic to continue as to all but one class of liquors." It seems to us that the *Elliott* case, and the authorities there cited, are directly in point in the case now under consideration, and that the decision of it should be thereby absolutely controlled.

We of course recognize, and are anxious to follow, the fundamental and thoroughly established rule that if any legislative act is capable of such a construction as will permit it constitutionally to stand, the courts should adopt that construction and save the statute. As an instance in point, see *Singer Manufacturing Co.* v. *Wright*, 97 *Ga.* 114, where it was held that the words, "every sewing-machine company," occurring in a tax act attacked as being unconstitutional, could properly be said to comprehend and include "individuals" manufacturing and selling sewing-machines, it appearing that it was the intention of the General Assembly to lay a tax upon the business itself, and not upon any given class of persons engaged therein. Where, however, the language of a statute is capable of receiving but one construction, it is not permissible to either extend or restrict its obvious meaning, and thus, for the purpose of maintaining its constitutionality, impute to the General Assembly a purpose which it neither expressly nor by implication professed to have in view in enacting the law. In other words, we do not think a statute which is irreconcilably unconstitutional can be saved by giving it a signification at variance with its plainly expressed terms. An instance of this kind is here presented.

*Judgment reversed. All the Justices concurring, except*

· LITTLE, J., dissenting. I am unable to agree with my brethren in the conclusion which has been reached by them in this case. In 1877 the General Assembly of Georgia, for the purpose of encouraging grape-culture in this State, passed an act by the terms of which it was declared that it should not be unlawful for any person "who shall manufacture or cause to be manufactured in this State any wine from grapes, the product of any vineyard in this State belonging to such person, to sell or offer to sell anywhere in the State such wine at wholesale, or in quantities not less than one quart." It is freely conceded

that this was a general law and in force in the State of Georgia since the year 1877.

On the 26th day of September, 1879, an act passed by the General Assembly was duly approved, which declared that "from and after the passage of this act the sale of all spirituous or intoxicating liquors is prohibited within the limits of Irwin county." The act also provided a penalty to be inflicted on persons who were guilty of a violation of its terms. An individual was indicted for the violation of this last act; and the question which arose was whether in view of the terms of the act of 1877 the latter act was unconstitutional, in that the general law authorized the sale of domestic wines by the manufacturer of such wines, without license and without incurring any penalty for such sale, in quantities of one quart of more; and the act of 1879 being a special act varied the terms of the general act of 1877. My brethren rule, that domestic wines being intoxicating liquors a general act which authorized the sale of such wines in Irwin county was in conflict with the special act which undertook to entirely prohibit the sale of spirituous or intoxicating liquors in Irwin county, and that the latter act was therefore unconstitutional. I can not agree in this ruling. It must be remembered that at the time of the passage of the act of 1879, the act of 1877 which authorizes the sale of domestic wine was in force, of which fact we are bound to assume the legislature had full notice and knowledge, and that the act of 1879 prohibiting the sale of spirituous or intoxicating liquors was passed with reference to the act of 1877. It will be noticed that in the opinion it is held that domestic wines are intoxicating liquors, and by the passage of the act of 1877 the General Assembly intended to put this class of intoxicants upon the free list. I am not able to hold the general proposition that domestic wines are intoxicating liquors. I presume that they are, but this court in a recent case ruled that it could not as a matter of law hold that blackberry wine was an intoxicating liquor; and yet blackberry wine is a domestic wine. But aside from this, we are, I think, bound to assume that in the passage of the act of 1879, while it was the intention of the General Assembly to prohibit the sale of all

spirituous or intoxicating liquors in Irwin county, it was also the intention of the lawmaking power of the State that this prohibition should be in force subject to any general law of the State which qualifiedly permitted the sale of a particular character of wine made from grapes, the culture of which had theretofore been attempted to be fostered by the legislature. The act of 1877 does not as a general proposition authorize the sale of domestic wines made from grapes. Only such wines which were the product of a vineyard in this State might be offered for sale by the person manufacturing or causing the same to be manufactured, in quantities not less than one quart. The object of the first act was to foster and encourage grape-culture. The object of the latter was to prohibit spirituous or intoxicating liquor to be sold in a particular county. So far as I am concerned I see not the slightest conflict in the two acts. If in the consideration of the act of 1879 it should be held that the provisions of that act forbid the sale of domestic wines as contemplated by the act of 1877, then the effect of the act, at most, would be to render the act unconstitutional when applied to the sale of domestic wines as contemplated by the general law. But if it were unconstitutional when applied to the sale of domestic wines, it would by no means follow that it is unconstitutional when applied to the sale of whisky, brandy, gin, rum, etc.

It will sometimes be found that an act of the legislature is opposed in some of its provisions to the constitution, while others standing by themselves would be unobjectionable. In any such case the portion which conflicts with the constitution must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association, must depend upon a consideration of the object of the law, and in what manner and to what extent the unconstitutional portion affects the remainder. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act but not connected with or dependent on others which are unconstitutional. Cooley's Const. Lim. 211, and a great number of authorities cited in note on page 212. The Supreme Court of Illinois, 19

Ill. 376, states the rule of construction thus: "Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution and give it the force of law, such construction will be adopted by the courts." And in New Hampshire the Supreme Court held it to be a duty so to construe every act of the legislature as to make it consistent, if it be possible, with the provisions of the constitution, and to so examine the statute "without stopping to inquire what construction might be warranted by the natural import of the language used." In 17 N. Y. 235, the Court of Appeals ruled that "a legislative act is not to be declared void upon a mere conflict of interpretation between the legislative and the judicial power. Before proceeding to annul by judicial sentence what has been enacted by the lawmaking power, it should be clearly made to appear that the act can not be supported by any reasonable intendment or allowable presumption." And Judge Cooley says in his work on Constitutional Limitations, top page 222: "And this, after all, is only the application of the familiar rule, that in the exposition of a statute it is the duty of the courts to seek to ascertain and carry out the intention of the legislature in its enactment and give full effect to such intention; and they are bound so to construe the statute, if practicable, as to give it force and validity rather than to avoid it and render it nugatory."

Looking to the intention of the legislature in the passage of the act of 1879, I am bound to conclude that the provisions of that act were enacted with due reference to the terms of the act of 1877, and that sales of spirituous and intoxicating liquors, not including the sale of domestic wines as contemplated by the act of 1877, are lawfully forbidden in Irwin county.