## TINSLEY v. THE STATE.

1. While the offense of selling spirituous liquors without a license can not be properly charged against one who sells such liquors in a county where prohibition exists under a valid statute, the offense in question can be committed in a county where prohibition does not exist for the reason that a special act attempting to provide for prohibition therein was itself unconstitutional.

2. Under the principle of the decision of this court in the case of *Papworth* v. *The State*, 103 *Ga.* 36, the special prohibition act of 1883 for Whitfield county is unconstitutional, nor was it rendered otherwise by the amendatory acts of 1888 and 1892. Even if an unconstitutional act can be vitalized by subsequent amendment, these two acts could not thus affect the act of 1883, because, even if they themselves are sufficiently comprehensive to legalize the sale of domestic wines to the extent allowed by the act of 1877, there was at the time they were enacted an existing general law of force on the subject with which they undertook to deal.

3. In view of the rulings above announced, there is no constitutional prohibitory act of force in Whitfield county, and therefore the conviction of the accused for selling spirituous liquors therein without a license, the same being supported by evidence, was lawful.

LITTLE and LEWIS, JJ., dissenting.

Submitted February 5, — Decided February 27, 1900.

Indictment for selling liquor.    Before Judge Candler. Whitfield superior court.    October term, 1899.

*R. J. & J. McCamy*, for plaintiff in error.
*Sam. P. Maddox, solicitor-general*, contra.

COBB, J.  Tinsley was tried in the superior court of Whitfield county, upon an indictment charging him with the offense of selling liquor without a license, and convicted.  His motion for a new trial having been overruled, he excepted.  It was contended by the accused that he could not be legally convicted of the offense charged, because there was at the date the sale was alleged to have taken place a valid local law which prohibited the sale of liquor in Whitfield county.  If his premise is correct, his conclusion would follow under the decision of this court in *Brown* v. *State*, 104 *Ga.* 525.  The State contended that this local law was unconstitutional, under the decision of this court in *Papworth* v. *State*, 103 *Ga.* 36, and that therefore the accused was properly indicted under the general law prohibiting the sale of liquor without a license from the proper authorities.  To determine which of these contentions is correct it is necessary to take into consideration the general laws of force in this State in reference to the sales of domestic wines, as well as the local laws passed for the purpose of prohibiting the sale of liquor in Whitfield county.  The act of 1877 (Acts of 1877, p. 33) provided that it should "not be unlawful for any person who shall manufacture, or cause to be manufactured, in this State, any wine from grapes, the product of any vineyard in this State, belonging to such person, and to sell or offer to sell, anywhere in this State, such wine at wholesale, or in quantities not less than one quart"; and expressly repealed all provisions of laws relating to the sale of domestic wines.  This act was, in *Papworth* v. *State*, supra, held to be a general law within the meaning of that provision of the constitution of this State which declares that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."  Civil Code, § 5732.  In 1885 (Acts 1884–5, p. 121) the general local option liquor law was passed,

and it was therein provided that nothing in that act should "be so construed as to prevent the manufacture, sale, and use of domestic wines; . . *provided*, such wines . . shall not be sold in barrooms by retail." The policy of the law in reference to domestic wines, as indicated by the act of 1877, is thus expressly recognized in the act of 1885. In 1887 (Acts 1887, p. 21) an act was passed which provided that in every county in this State where either under the general local option liquor law or under any other general or local law the sale of liquor was prohibited, but with exceptions in relation to any kind of wines, a tax of ten thousand dollars should be annually levied and collected from every dealer in domestic wines, but with the proviso that nothing in the act should "be so construed as to levy a tax on dealers in or producers of wines manufactured from grapes or berries purchased by them or grown on lands owned, leased, or rented by said dealers; and *provided* further, that said wines shall not be sold in quantities less than one quart, and shall not be drank on the premises where sold." The policy indicated in the acts of 1877 and 1885, not to interfere with the sale of domestic wines made in this State, with certain exceptions noted in those acts, is thus again recognized by the act just referred to, and that policy is by this act extended to wines made from berries; the act of 1877 relating exclusively to wines made from grapes. In the light of this legislation, no other conclusion can be reached than that it is the settled policy of this State not to interfere with the sales of domestic wines manufactured in this State from grapes or berries grown in this State, on lands owned or leased by the person manufacturing such wines, save only that they shall not be sold in quantities of less than one quart, and shall not be drunk on the premises where sold.

The local law for Whitfield county is to be now considered in the light of this established policy of the State. In 1883 (Acts 1882–3, p. 603) an act was passed providing that "the sale of spirituous, malt, vinous, or other intoxicating liquors" in the county of Whitfield should be prohibited until the same was authorized by a majority of the legal voters of that county. No exception whatever in regard to domestic wines was therein

made. This act is therefore, under the decision in the *Papworth* case, unconstitutional; and, in the absence of other legislation on the subject applicable to Whitfield county, the case would be absolutely controlled by the decision made in that case. In 1888, however, (Acts 1888, p. 314) the act just above referred to was amended so as to provide that any person in Whitfield county who should "manufacture wine from grapes raised on lands owned or rented by him in said county shall have the right to sell said wine in quantities not less than one-half gallon" at the place where such wine is manufactured. Even if an unconstitutional law can be vitalized by being amended, this act did not have the effect of rendering the act of 1883 constitutional; for it is itself unconstitutional, for two reasons. In the first place, it attempted to regulate the sale of domestic wines in Whitfield county in a different way from that in which the sale was regulated by the act of 1877; the local act providing that the wine could not be sold in quantities less than one-half gallon, whereas under the act of 1877 it could be sold in quantities of one quart. In the second place, if the act was vitalized by the amending act, it became operative only from the time the amending act was passed, and this was at a time when the General Assembly had no power to pass a local prohibition law, by reason of the fact that it was a special law in a case for which provision had already been made by the general local option liquor law, which was, in *Crabb* v. *State*, 88 *Ga.* 584, held to be a general law within the meaning of the constitution. In 1892 (Acts 1892, p. 249) the local act of 1883 for Whitfield county was further amended by adding a proviso, "that the provisions of this act shall not be construed to apply to the sale of domestic wine made from grapes or berries grown in said county, when sold by the makers thereof; *provided*, that said wines shall not be sold in quantities less than one quart and shall not be drank on the premises where sold." As the act of 1883 was unconstitutional at the time of its passage, and as in 1892 the General Assembly had no power to pass a local law prohibiting the sale of liquor in one county, the act of 1892 would not have the effect of rendering the act of 1883 constitutional, even if it should be held

that the act of 1892 was not in conflict with the act of 1877. The act of 1883 being itself unconstitutional, and the General Assembly neither in 1888 nor in 1892 having the power to pass a local law on the subject dealt with by the act of 1883, it follows that the three acts are inoperative, and that therefore there is no law prohibiting the sale of liquor in the county of Whitfield.

It was contended in the argument here that the *Papworth* case was not controlling, because in that case the local law for Irwin county provided for absolute prohibition without a vote of the people, and that in the cases of *Patton* v. *State*, 80 *Ga.* 714, *Bell* v. *State*, 91 *Ga.* 227, and *Redding* v. *State*, 91 *Ga.* 231, this court had held that acts similar to the one for Whitfield county, which provided that there should be an election on the question of prohibition, were valid laws. In the *Patton* case the indictment charged the violation of a local law passed for Habersham county in 1884. In the *Bell* and *Redding* cases the indictment charged a violation of a local act passed in 1882, providing for an election in Monroe county on the question of the sale of intoxicating liquors. In none of these cases was any question raised as to the constitutionality of the laws under which the indictments were framed, the decision dealing with the case as if the indictments were under valid laws; and therefore the cases, even if the acts then under consideration were in all respects identical with the one we are now dealing with, are not precedents on the question under consideration. As was remarked by Judge Bleckley in *Kaufman* v. *Ferst*, 55 *Ga.* 353, " A precedent which has no characteristic but that of being a physical fact is of very little consequence."

The charge of the judge was in accord with the views above expressed, and, as the evidence fully authorized the verdict, there was no error in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur, except Little and Lewis, JJ., who dissent.*