## BARKER v. THE STATE.

1. Construing Penal Code, § 450, in the light of the act from which it was codified, it provides for the punishment of one who deals in domestic wines and other intoxicants the sale of which is not prohibited by the general local op-

tion liquor law, or by any other local or general law of the State prohibiting the sale of intoxicating liquors.

2. Corn whisky not being an intoxicant which is excepted from any of the laws just referred to, one who deals in such whisky can not be lawfully convicted upon an accusation framed under the above-mentioned section of the code.

3. An accusation which charges that the accused "did deal in domestic wines, whisky, and other intoxicants, in violation of law, having failed to pay the tax imposed by law," was manifestly intended to charge a violation of the Penal Code, § 450 ; and the word "whisky" must be treated as surplusage.

4. When upon a trial under an accusation of the character above indicated the sole evidence against the accused is that he sold "corn whisky," a verdict finding him guilty can not be upheld.

Argued February 16, — Decided March 18, 1903.

Accusation of selling liquor.  Before Judge Reece.  City court of Floyd county.  January 5, 1903.

*M. B. Eubanks,* for plaintiff in error.

*Moses Wright, solicitor-general,* and *George A. H. Harris,* contra.

COBB, J.  Barker was arraigned on an accusation charging that on October, 10, 1902, in Floyd county, he "did deal in domestic wines, whisky, and other intoxicants, in violation of law, having failed to pay the tax imposed by law."   The evidence warranted a finding that the accused sold to another person in Floyd county a bottle of corn whisky.   He was convicted, and his motion for a new trial, containing the general and several special grounds, was overruled.   To this judgment he excepted.

It is important at the outset to ascertain under what law the foregoing accusation was framed.   Counsel for the State insists that the accusation can be properly treated as having been framed under the Penal Code, § 428, § 430, § 431, or § 450.   The accusation is in the language quoted in the third headnote.   Section 428 makes it penal to sell, or solicit the sale, personally or by agent, of spirituous, malt, or intoxicating liquors, in any county where the sale of such liquors is prohibited by law, high license, or otherwise.   Section 430 makes it unlawful to fail to pay the tax required by law after registering, or to commence to sell without having complied with the requirements of law as to registration, payment of tax, etc.   Section 431 prohibits the sale without having obtained a license.   We think it clear that it was not intended to charge a violation of any of these three sections.   A comparison of the language of the accusation with the language of each of these

sections will demonstrate that the pleader did not, in framing the accusation, intend to charge a violation of any one of them. We are strengthened in this view, so far as sections 430 and 431 are concerned, when we consider the fact that by the act of December 11, 1901, establishing a dispensary in the city of Rome in Floyd county, the sale of liquors referred to in these sections is prohibited in Floyd county by any other person than the manager of the dispensary. See Acts 1901, p. 620. This provision of the dispensary law, as well as others, has been held to be constitutional and valid. *Chamlee* v. *Davis*, 115 *Ga.* 266. As no person other than the manager of the dispensary can lawfully sell such liquors in the county of Floyd, it follows that no other person is liable to pay the tax referred to in section 430; nor can any person obtain the license to sell referred to in section 431. When it is legally impossible to obtain a license to do an act, or to obtain the right to do an act by paying a tax therefor, a person can not be convicted of doing the act without having paid the tax or obtained the license. See *Collins* v. *State*, 114 *Ga.* 70, and cases cited; *Batty* v. *State*, 114 *Ga.* 79. The accusation can not be held to have been framed under section 428, for the reason that the language of the accusation is such as to negative altogether this inference. The specific offense charged in the accusation is dealing in whisky and other intoxicants without having paid the tax required by law. There is nothing in section 428 about a tax, but the offense embraced within the terms of that section is selling, or soliciting the sale of liquors in places where the sale is prohibited.'

Section 450 of the Penal Code, or so much of it as is material, is as follows: "Any person who shall deal in domestic wines or other intoxicants in violation of law, and shall fail or refuse to pay the tax imposed by law, shall be guilty of a misdemeanor." The accusation is in almost the exact language of the section, the only difference being that the accusation interpolates the word "whisky," which is not found in the section. On a comparison of the two the conclusion is irresistible that the pleader intended to charge a violation of this section. So treating it, can the conviction be upheld? There are perhaps several reasons why it can not, but only one will be noticed, as it is decisive of the case, and that is that the word "intoxicants," as used in the section, does not embrace corn whisky, which the evidence shows that the accused sold. In

a broad sense the word includes all liquors which will intoxicate; and in this sense corn whisky is of course an intoxicant. But a glance at the historical facts which led up to the passage of the act from which the section was codified, as well as at the provisions of the act itself, will show that the word was not used in its broad sense. The section of the code must, of course, be construed in the light of the source from which it was derived. The general local option liquor law excepted from its operation domestic wines and cider. Political Code, §1549. There were of force, at the time of the adoption of this law, various local prohibition laws which excepted from their operation domestic wines, and probably cider and other intoxicants. It is a matter of public history that an election under the general local option law was held in 1885 in the county of Fulton, in which the capital city of the State is located; and that when the ordinary was about to declare that the election had resulted in favor of prohibition, certain persons interested in property which would be affected by the prohibition of the sale of liquor filed a bill in the United States court asking that the ordinary be enjoined from declaring the result. While this injunction was denied, Judge McCay in his decision expressed the opinion that if the expression "domestic wines," in the general local option law, was held to mean only wines manufactured in Georgia, the law, or certainly that part of the law, would be unconstitutional, as a discrimination against wines manufactured in other States. See Weil v. Calhoun, 25 Fed. 865. Persons interested in the sale of wines manufactured in other States, acting upon this suggestion, after the result of the election was declared, opened in the city of Atlanta what were called " wine-rooms," places ostensibly established for the sale of domestic wines manufactured at any point in the United States. This construction of the term " domestic wines " seems to have been acquiesced in, and the operators of these wine-rooms were not disturbed, so long as they confined themselves to the sale of wines only. But while the rooms were ostensibly established for the purpose of selling only wines, the records of this court will show that in many instances, if not in all, these wine-rooms were really places where liquors of all kinds were sold in violation of the local option law. Such was the condition of affairs when the General Assembly met in 1887, when a law was enacted which imposed a tax of $10,000

upon dealers in domestic wines.     See Acts 1887, p. 21.     The first section of the act provided that in every county where the sale of liquors had been or should thereafter be prohibited, but with the exception of domestic wines, the tax above mentioned should be collected from every dealer " in domestic wines or other intoxicants not prohibited as aforesaid," domestic wines manufactured from grapes or berries grown on lands in this State, when sold in quantities not less than one quart, being excepted from the provisions of the act.     The third section of the act was as follows: "Any person or persons who shall, after the passage of this act, deal in domestic wines and other intoxicants in violation of this act, and shall fail or refuse to pay the tax imposed in this act, shall be deemed guilty of a misdemeanor," etc.

It is manifest that the Penal Code, § 450, is a mere codification of this section of the act of 1887.     As the word " intoxicants " in the act unquestionably means intoxicants the sale of which is not prohibited by any law of the State, the word should receive the same construction in the section of the code.     So construing it, it would not include corn whisky, for there was then and is now no general or local prohibition law which excepts from its operation such an intoxicant.     We do not think there was any intoxicant excepted from the operation of any prohibition law which would properly be embraced within the term " whisky," and if so, this word in the accusation must be treated as surplusage.     But certainly corn whisky has not been excepted by any law.     So that while the accusation would be good so far as domestic wines and other intoxicants the sale of which has been prohibited by law are concerned, evidence showing the accused to have sold corn whisky would not support a conviction under the accusation.     See, in this connection, *Loid* v. *State*, 104 *Ga.* 724.     The evidence does not show the sale of such an intoxicant as is referred to in the Penal Code, § 450.     Where a law is enacted prohibiting the sale of liquors in a given locality, the operation of all laws regulating the sale of such liquors is suspended, and an indictment or accusation charging a sale of any liquor the sale of which is absolutely prohibited under all circumstances should be framed under the prohibitory law.     *Collins* v. *State*, supra, and cases cited.     The fact that in a given case the local act was a dispensary law would not, we think, alter the principle.     Nor do we think that the principle of these

decisions would be any the less applicable because the dispensary law does not fix any penalty for a violation of the prohibition contained in the act. The mere fact that the act provides for no penalty does not make the law any the less a prohibitory law, or make the prohibition any the less binding upon all persons in the community. While experience has demonstrated that a prohibition of this character can not be enforced unless punishment is prescribed for its violation, still all persons coming within its operation are as much bound to obey the mandate of the law as if a severe penalty were provided for its violation. The fact that a large number of persons may, under the present state of society, fail to recognize the moral obligation resting upon them to obey any constitutional command of the legislature does not make the command any the less imperative or binding.

While the question is not now before us, and we can, therefore, make no authoritative ruling on the subject, it may be that a person selling liquors in Floyd county otherwise than by the dispensary can be indicted and punished under the provisions of the act of 1893, embodied in the Penal Code, § 428, which was amended by the act of 1897. As thus amended the section is as follows: " If any person shall sell, contract to sell, take orders for, or solicit, personally or by agent, the sale of spirituous, malt, or intoxicating liquors, in any county or town or municipal corporation or militia district, or other place where the sale of such liquors is prohibited by law, high license, or otherwise, he shall be guilty of a misdemeanor." Acts 1897, p. 39. The manifest purpose of this law was to prevent the sale of intoxicating liquors in a prohibition county, town, or district. See *Williams* v. *State,* 107 *Ga.* 694. The law is framed to prohibit a sale in a locality where such sale is prohibited " by law, high license, or otherwise." The sale of liquor by private individuals is just as effectually prohibited in Floyd county as it is in any other county of the State. Of course Floyd county is not a prohibition county in the sense that the sale of liquors in any form and by any method is absolutely prohibited by law; and it is altogether probable that when the act of 1893 was passed, the General Assembly did not have in contemplation a locality in which sales were made through the medium of a dispensary. But the language of the act may be sufficiently broad to cover a sale made in such a locality; and it is not improbable that the sale of

liquors by governmental authorities in a given locality would not prevent such place from coming within the description of a territory where the sale is " prohibited by law, high license, or otherwise," when no private individuals are allowed, under any circumstance, to engage in the sale. We have thought it proper to throw out the suggestion just made; but of course, as stated above, the point is not now before us for decision, and has not received matured or authoritative consideration. As the accusation in the present case was framed under the Penal Code, § 450, and as the sale of corn whisky is not prohibited by that section, the conviction of the accused was unlawful, and the verdict against him should have been set aside.

*Judgment reversed.    By five Justices.*