## GLOVER *v.* THE STATE.

1. An indictment which charges the offense defined by a legislative act in the language of the act, where the description of the acts alleged as constituting the offense is full enough to put the defendant on notice of the offense with which he is charged, is sufficiently specific.
2. The title of the act approved August 10, 1906: "An act fixing the annual license fee for retailing or vending spirituous, intoxicating, or malt liquors in Irwin county at twenty thousand dollars, and to provide a penalty for violating the same, and for other purposes," is broad enough to provide for a license fee for the sale of such liquors in any quantity.
3. The title of the act referred to in the preceding headnote expresses a legislative intent to regulate the sale of spirituous, intoxicating, or malt liquors in Irwin county, and the territory of incorporated towns located in that county is within the provisions of the act.
4. Whenever the legislature passes an act and applies its provisions to the entire territory of a county, inconsistent provisions in the charter of an incorporated town located within that county are repealed by necessary implication.
5. The item in the Political Code, § 421, "To sell liquors, $25.00," and the provisions of the same code, §§ 1519, 1535, 1536, 1537, 1538, 1540, and of the Penal Code, §§ 431, 433, are to be construed in pari materia; and when construed together they will not be regarded as prescribing such a general law for the license of spirituous, intoxicating, or malt liquors, and fixing a license fee to sell the same, the existence of which will preclude the General Assembly from enacting a local law fixing the license fee in a named county, on the ground that such local law is violative of that clause of the constitution which declares that "no special law shall be enacted in any case for which provision has been made by an existing general law."
6. So much of the Irwin county liquor act, approved August 10th, 1906, as includes domestic wines in the category of the liquors, the sale of which may be licensed by the county authorities, is inoperative, because the wine act of 1904 (Acts 1904, p. 98), conferring on municipalities the

power to license the sale of domestic wines in quantities of not less than a quart, not to be drunk on the premises within the municipality, is a general law. Inasmuch as this unconstitutional feature may be disassociated from the act without interfering with the general legislative design, the local act will not be held void in its entirety on this account.

7. The fifth section of the Irwin county liquor act discriminates against wines made outside of the State, but the effect of the omission to exempt from license wines made outside of the State is not to render the act invalid, but to place wines on the same basis, whether made within or without the State.

8. The presiding judge allowed the defendant to introduce evidence to support his plea, that the license fee fixed in the act was so large as to be prohibitive, and that therefore the local act contravened the constitutional provision forbidding special legislation where there is an existing general law, viz. the general local option liquor law. Even if a legislative act can be declared unconstitutional by the finding of a jury on the facts of a particular case, the evidence submitted did not necessarily constrain a finding that the license fee was prohibitory.

Argued October 18, — Decided November 8, 1906.

Indictment for selling liquor. Before Judge Martin. Irwin superior court. September 7, 1906.

The plaintiff in error was tried for the offense of selling liquor without a license, under an indictment framed upon a special statute approved August 10, 1906, entitled "An act fixing the annual license fee for retailing or vending spirituous, intoxicating, or malt liquors in Irwin county at twenty thousand dollars, and to provide a penalty for violating the same, and for other purposes." Acts of 1906, p. 430. This act provided that from and after its passage, "the annual license fee to retail or vend spirituous, intoxicating or malt liquors, in any quantity, in the county of Irwin, in this State, or in the incorporated cities, towns or villages in said county," should be $20,000, and that "neither the county authorities in the county of Irwin, nor the municipal authorities of any incorporated city, town or village in said county of Irwin, [should] grant or issue license to any person to retail or vend spirituous, intoxicating or malt liquors in any quantity anywhere in said county of Irwin, until the person applying" for a license should pay "into the county treasury said license fee of twenty thousand dollars," and give the bond and take the oath "required by law for retailers of spirituous liquors," and otherwise comply with "the general law in reference to the retailing or vending of such liquors; and any license granted or issued without the

payment of said twenty thousand dolars, and without a full com-- pliance with the requirements of this act and. the general law [should] be null and void." The act also set forth the following provisions: The "words 'spirituous, malt or intoxicating liquors," as used in this act, shall be construed to mean and embrace all and every kind of distilled spirits, malt liquors, wines, beers,. ciders and drinks, which, if drank to excess, will produce intoxica- tion. . . It shall be unlawful for any person, by himself or agent, either directly or indirectly, to sell, barter, exchange, fur- nish or supply spirituous, intoxicating or malt liquors in any quantity in said county of Irwin for a valuable consideration, or to give away any such liquors for the purpose of inducing trade,. without first paying said license;" but "nothing in this act shall be construed to prevent the sale or to require said annual license fee for the sale of domestic wines, made in said county, or for the sale of wine for sacramental purposes." The act further provided that any violation of its provisions should be a misdemeanor, and should be punishable as such.

The indictment charged that the accused, on the 11th day of August, 1906, "with force and arms and without the license from the proper authority authorized by law to grant license for the sale of such liquors in said county of Irwin, and without having paid into the county treasury of said county of Irwin the license fee of twenty thousand dollars as required by the local act of the legislature approved August 10th, 1906, and without a license from the corporate authorities of any town or city issued in accord- ance with the provisions of said local act of the legislature, whereby lawful authority to grant such license is vested in such corporate authorities, did unlawfully sell and vend certain quantities of whiskey, alcoholic liquors, mixtures of such liquors, and malt liquors, contrary to the laws of said State," etc. The accused de-- murred to the indictment generally, on the ground that it set forth no penal offense, and also specially, because it failed to allege a. sale of liquor by retail or in a quantity less than a quart, and be- cause the act which the accused was charged with violating was,. for various reasons assigned, unconstitutional. By way of special plea, the accused set up the defense that the license fee of $20,000 was prohibitive, and therefore the local act of 1906 was unconsti-- tutional, being, in its practical effect and operation, in direct con-

flict with the general local option law. The demurrer was over-ruled, and the case was submitted to the presiding judge for determination without a jury, upon an agreed statement of facts and certain evidence which the accused offered, in connection with his statement, to show that the business of selling liquor in Irwin county could not be successfully carried on if burdened with a license fee such as was prescribed by the local act. In the agreed statement of facts it was admitted that the accused did, on the date charged in the indictment, without first paying the license fee of $20,000, sell at retail certain spirituous and other intoxicating liquors, as therein charged, but that he had previously obtained a liquor license for the year 1906 from the town of Fitzgerald, granted in accordance with the terms of its charter, and had, before doing business thereunder, complied with all the State and federal regulations then of force. The judge found that the accused had violated the provisions of the act of 1906, and passed sentence upon him accordingly; and exception is taken to this finding, as well as to the ruling upon the demurrer.

*Haygood & Cutts, Candlers, Thomson & Hirsch,* and *W. I. Heyward,* for plaintiff in error.

*E. D. Graham, solicitor-general,* contra.

EVANS, J. (After stating the facts.) 1. The first and second grounds of the demurrer are that the indictment sets forth no offense, and fails to allege that the sale of intoxicating liquor was by retail or in a quantity less than a quart. The indictment charged the offense in the language of the local act fixing the license fee for retailing or vending spirituous, intoxicating, or malt liquors in Irwin county, and fixing a penalty for violating the same. If that local act is not unconstitutional for any of the reasons assigned in the demurrer or the bill of exceptions, then an indictment which charges the offense defined by the act, in the language of the act, where the description of the acts alleged as constituting the offense is full enough to put the defendant on notice of the offense with which he is charged, is sufficiently specific.

2. It is insisted in the demurrer that the local act is violative of the constitution, article 3, section 7, paragraph 8 (Civil Code, § 5771), in this respect: the body of the local act requires a license fee of twenty thousand dollars before there can be a sale of

spirituous or other intoxicating liquor in any quantity, whereas the title of the act requires a license fee only of retailers or dealers who sell in quantities of less than one quart; and the intention of the act, as disclosed by the body thereof, being to apply its provisions to all sales, this purpose is frustrated by the limitation in the title. The constitutional provision referred to reads: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." To state the contention concretely, it is that the title in these words, "An act fixing the annual license fee for retailing or vending spirituous" or other liquors in Irwin county, limits the act in its application to a license fee for the sale of such liquors by retail, in quantities less than one quart, while the body of the act fixes the "annual license fee to retail or vend spirituous [or other] liquors in any quantity in the county of Irwin." The soundness of this attack depends upon the interpretation to be given to the word "vending," as used in the title. We can not say that "vending" is the equivalent of "retailing," as used in the title, because to give it this limited significance would be to transgress the familiar canon of construction which requires that some effect, if possible, shall be given every word, clause, and sentence of a statute. To vend, in its largest sense, means to sell; and it is quite apparent that the legislative scheme was to impose a license fee not only on the retailer, who sells in quantities less than a quart, but also upon all venders or sellers of intoxicating liquors, irrespective of the quantity involved in the sale. When this construction is given to the title, the body does not contain matter different from what is expressed in the title of the act.

3. It is also urged in the demurrer that the local act is further opposed to the constitutional provision quoted in the preceding division of this opinion, in this respect: the body of the local act forbids the sale of intoxicating liquor in any municipal corporation, unless the license fee be first paid, whereas the title of the act applies only to Irwin county; and as the existing law of the State excepts municipal corporations from the operation of county license, the true meaning and intent of the title of the act is that the same applies only to those portions of Irwin county lying outside of municipal corporations, and therefore the body of the act contains matter different from that which is expressed in the

title, to wit: so much of the body of the act as undertakes to make it apply to municipal corporations in the county of Irwin. The manifest purpose of the act is to fix a license fee for the sale of spirituous or other intoxicating liquors in Irwin county. The General Assembly plainly expressed its intent to regulate the sale in a designated territory, and that territory embraces the whole county of Irwin. As the whole must include all the parts, the territory embraced in incorporated towns located within the confines of the county must, of necessity, come within the operation of the act. The argumentative statement in the demurrer that, under existing law, municipal corporations are excepted from the operation of county license will be noticed elsewhere in this opinion, and we will attempt there to show that the laws which except incorporated towns and cities are special, and not general in character, and that there was no obstacle to prevent the legislature from passing a local law for an entire county, effective both in urban and non-urban territory.

4. The local act is said to be obnoxious to paragraph 17, section 7, article 3 of the constitution, which is as follows: "No law, or section of the code, shall be amended or repealed by mere reference to its title, or to the number of the section of the code, but the amending or repealing act shall describe the law to be amended or repealed, as well as the alteration to be made." It is contended that the effect of the local act is to practically repeal, or at least to materially amend, section 40 of the act of December 2, 1896 (Acts of 1896, pp. 157, 168), incorporating the city of Fitzgerald, in Irwin county, wherein exclusive authority was given to the mayor and council to regulate and control the sale of intoxicating liquors in that city; and that the effect of the local act is further to practically repeal, or at least materially amend, the Political Code, § 421 (which fixes the county charge for license to sell liquors at $25), and that neither the act incorporating Fitzgerald nor this section of the Political Code is in any way referred to or described in the local act. As has been previously indicated, the local act is applicable to the whole county. Whenever the legislature enacts a local act and applies its provisions to the entire territory of a county, inconsistent provisions in a charter of an incorporated town located within that county are repealed by necessary implication. *Turner* v. *Mayor of Forsyth,* 78 *Ga.* 683; *Strauss* v.

*Mayor of Waycross,* 97 *Ga.* 475. Upon the enactment of the local law fixing the license fee for the sale of intoxicating liquors in the county of Irwin, the charter provision of the city of Fitzgerald giving that municipality exclusive power to grant licenses and regulate the sale of liquor in that city was superseded by the local act. With reference to the criticism that the effect of the local act will be to repeal or amend the code section referred to, we will now attempt to demonstrate that this code section is not a general law, but only special in its scope and effect, and for this reason it was competent for the legislature to enact another local law for Irwin county. A similar contention was presented in the case of *Sasser* v. *Martin,* 101 *Ga.* 477, but it is insisted by the counsel for the plaintiff in error that the decision therein announced is not to be regarded as having any application to the present case, because it was made with reference to the law as it existed in 1879, the date of the passage of the Bulloch county license act, and before the legislature effected a complete change in its policy as to the granting of liquor licenses by county authorities.

5. The question dealt with and disposed of in the *Sasser-Martin* case, supra, was whether, at the time of the passage of the act of September 5, 1879, providing for the granting of licenses to sell intoxicating liquors in the county of Bulloch, there was any general law on the subject of licensing the sale of such liquors with which that act came into conflict. In reaching the decision announced in that case, the public laws of the State with regard to the sale of intoxicating liquors, as embraced in the Code of 1882, were looked to and considered as controlling the question then in hand. Since 1882, the public laws regulating the sale of intoxicating liquors in this State have been, in certain respects, amended and amplified. By an act approved December 22, 1884, to amend § 1419 of the Code of 1882, persons desiring to sell spirituous liquors in any quantity less than a gallon were required to apply to the proper authorities for a license. Acts of 1884-5, p. 42. Prior to that date, provision was made only for the granting of licenses to sell spirituous liquors at "retail" (Code of 1882, § 1419) ; that is to say, in quantities of less than one quart. Id. § 1424; *Beiser* v. *State,* 79 *Ga.* 327, 329. Under an act approved October 16, 1885, still further amending § 1419 of the Code of 1882, provision was made that before any license should be granted, the applicant

therefor should present to the ordinary the written consent of ten ·of the nearest bona fide residents (five of whom should be freeholders) living nearest to the place of business where such spirituous liquors were to be sold; but that this additional requirement of the applicant should not be understood to apply to the licensing of the sale of liquor in incorporated towns or cities. Acts of 1884-5, p. 59-60. In other words, an applicant for a license who desired to sell outside of an incorporated town or city was required, as a condition precedent to getting a license, to exhibit to the ordinary the written consent of ten of the nearest residents to his proposed place of business, as provided by that act. No other change in the then existing law was thereby made. In 1890, the General Assembly passed an act declaring that "it shall be unlawful for any person, firm or corporation in this State, to sell spirituous, vinous or malt liquors in any county or village thereof, in any quantity, without first obtaining a license from the authorities now authorized by law to grant license for the sale of such liquors by retail; and the laws now in force in this State with reference to the granting of license to retail dealers in spirituous, vinous and malt liquors in the several counties, and the penalties attached for the violation of the same, are hereby made applicable to dealers who sell in any quantity whatever; *provided,* that nothing in this act shall be so construed as to interfere with municipal laws regulating the sale of spirituous liquors, by wholesale or otherwise," nor to "interfere with existing laws in regard to the sale of domestic wines." Acts of 1890-91, vol. 1, p. 128. This act merely penalized the sale, without license, of any kind of intoxicating liquors (with an exception as to domestic wines), in any quantity whatever, in any county of this State or village thereof. It did not prescribe how licenses should be procured, nor make any change in the existing law as to the granting of licenses; moreover, it expressly declared its purpose was not to supersede or disturb any municipal law regulating the sale, by wholesale or otherwise, of spirituous liquors, nor to substitute any change of policy with regard to the sale of domestic wines. In construing this act, it was said, in *Hardison* v. *State,* 95 *Ga.* 337: "If the selling is done in an incorporated city, town or village, the municipal authorities of which have authority to grant liquor licenses, the license must be obtained from those authorities; if elsewhere, it

must be obtained from the county authorities." In none of the acts passed since the Code of 1882 has there been any attempt to amend or in any way modify section 1422 thereof, which expressly declared that none of the provisions of the then existing law respecting the granting of licenses by the ordinary should "apply to any corporation, town or city, which by charter has power to grant licenses, provided the fees for licenses are at least as much in said city as are required by law in the county." The amount of the prescribed license fee was twenty-five dollars. Code of 1882, § 529.

But it is insisted that the law relating to the granting of liquor licenses underwent a radical change in the compilation of the new Code of 1895 and its adoption by the General Assembly. Chapter 8 of the thirteenth title of the Political Code (page 416) deals with the subject of "liquor," and § 1519 of article 1 thereunder is headed, "License to sell, how obtained." It first provides that application must be made to the ordinary (or county commissioners, if there be a board of commissioners), who shall have power to grant or refuse the application. Next comes the requirement introduced by the act of 1885, respecting the written consent of ten bona fide residents to the granting of the license, followed by the proviso, "that this section shall not apply to incorporated towns or cities." Apparently, the term "section" refers to the section of the code in which it is used, § 1519; but if so, the power of the county authorities to grant licenses is limited to territory not included within any incorporated town or city, irrespective of whether the municipal authorities have or have not power to grant a license. The express declaration to the contrary contained in section 1422 of the Code of 1882 is not, however, omitted from the chapter on the subject of liquor, but its precise language is to be found in article 3, which takes up the subtitle of "regulating the sale of liquors." Pol. Code, § 1538. The first of the sections under that article (§ 1535) declares that no one shall sell any intoxicating liquors, in any quantity, in any county or village in this State, without first obtaining a license; the next section deals with the oath to be taken by venders of spirituous liquors in any quantity; section 1537 declares that a license shall not authorize the person to whom it is issued to sell at more than one place in the county; and the following section (brought forward from the Code of

1882) says that "Said provisions do not apply to any corporation, town or city, *which by charter has power to grant licenses,*" etc. The "said provisions" are not, assuredly, only those embraced in the section immediately preceding, for it can not be assumed that the intent was to allow a vender to sell at more than one place in a city, under one and the same license, upon payment of but one license fee; nor would there be any reason, simply because he was operating under a municipal license, for relieving him from taking the oath referred to in section 1536; while it would be absurd to attribute to the codifiers or the General Assembly any intention to declare that the provisions of section 1535 should not apply to a municipality having power to grant licenses, since this would be the equivalent of saying it should *not* be unlawful for a person to sell intoxicating liquors therein "without first obtaining a license." Obviously it can not be concluded that the intention was that none of the preceding provisions of article 3 should be held to apply to such a municipality, if "the fees for licenses [were] at least as much in said city as are required by law in the county." The only reasonable conclusion to be drawn is that there was a legislative intent to except a certain class of municipalities (upon a stated condition) from the operation of the general scheme adopted for fixing a license fee for the sale of intoxicating liquors, providing how and upon what conditions a license could be obtained, and "regulating the sale of liquors" in various particulars. This general scheme is set forth in chapter 8, but from the anomalous position which section 1538 occupies, relatively to those provisions it must have been intended to qualify, it is evident that we can not with any degree of certainty arrive at the true intent of the legislature without resorting to the expedient of looking to the declaration of that intent made in the various acts passed by the General Assembly since the Code of 1882, and reading them in connection with the law as it then stood and as it is now expressed in the Code of 1895. This course is proper to be pursued when there is in the codification of a statute more or less uncertainty of intent or ambiguity in expressing that intent. *Smith* v. *Evans,* 125 *Ga.* 112. It is proper to pursue this course in the present instance, because, considering in pari materia the various provisions of the Code of 1895, relating to the granting of liquor licenses and the regulation of the liquor traffic, it is evident that the scheme of the General

Assembly was not to make certain municipalities in "wet" counties "dry," nor to limit the power of the county authorities over the granting of licenses to territory not included in any municipality. (See also, in this connection, Pol. Code, §§ 420-421, 1521-1522; Penal Code, §§ 431, 433.)    If this was the legislative scheme, there would have been no occasion for preserving and incorporating into the new code the provision embraced in section 1422 of the Code of 1882, excepting from the operation of the public laws respecting the granting of licenses such municipalities as had power to issue licenses, upon the express condition that these municipalities should exact from the seller as a license fee at least as much as that to be exacted by the county authorities for a county license.   Looking, then, to the law as it stood when the new code was compiled, we find that (with the exception of the corporate limits of a particular class of municipalities) the territory within which the county authorities were empowered to grant licenses embraced the entire county, as well as the urban districts which were incorporated as cities or towns as the rural districts which were sparsely peopled and were under less rigid police protection.

The misleading proviso contained in the Political Code, § 1519, "that this section shall not apply to incorporated towns or cities," doubtless was the result of an effort on the part of the codifiers to adhere as closely as possible to the precise language of the amending act of 1885 (Acts of 1884-5, p. 59), rather than the result of an attempt to arrive at the true meaning of that act.   It was awkwardly expressed, in that it proposed to amend section 1419 of the Code of 1882 by inserting therein a certain requirement to be made of the applicant for a liquor license, with the proviso that "this *Act* shall not apply to incorporated towns or cities." It is not proposed that the section as amended should set forth the provision that it—the "section"—should not apply to any municipality.   Had this been done, the section, as amended, would have been in hopeless conflict with the succeeding section of the code (§ 1422), which contained an exception of a specified class of cities and towns, under a stated condition, and which was logically the section to be amended or repealed in the event it was intended that the license law should have no application to any municipal corporation.   That the codifiers did not understand that this sec-

tion was in any way amended or repealed is evidenced by the fact that its language was introduced, without change of a syllable, as. section 1538 of the Political Code. It simply got misplaced; it: was neither overlooked nor neglected, but was assigned to a place in the code where its meaning was obscured. In view of these considerations, it can not fairly be said that the codifiers misinterpreted the existing law and evolved a new scheme for granting liquor licenses which has met with the approval of our General Assembly, so that there has thus come about a change in the law which we must recognize and feel constrained to enforce. Indeed, any change in the law brought about by its codification is not one: which reflects a different scheme or policy adopted by the legislature, but one which has so confused and involved the law as it. existed that its meaning can not be gathered from a reading of the new code without resort being had to extrinsic evidence of the: legislative will.

As has been already pointed out, the policy with regard to granting liquor licenses has undergone no essential transmutation since the Code of 1882 or the rendition of the decision in the *Sasser-Martin* case. In fact, in passing recent local legislation affecting various sections of the State, the decision in that case has evidently been looked to and relied on by the General Assembly in shaping its policy of regulating the sale of liquors in communities where different conditions prevail or there is a difference of sentiment upon the vital question of how the situation should be met. That decision is not binding as authority upon this court, having been concurred in by only five Justices. But this bench, as now constituted, is well content to let it stand as a precedent, for the reasoning of Mr. Justice Little, who pronounced it, is more than persuasive, and rests upon familiar rules of statutory construction which may no longer be questioned. In undertaking to arrive at the purpose of the General Assembly—whether the legislative intent was to deal with the granting of liquor licenses by a general law or by way of special enactment—we are bound to attribute to the members of that body a knowledge of our fundamental law on the subject of legislation and an abiding purpose to observe the constitutional restrictions by which they are to be governed. Bearing this in mind, we can not conclude that the General Assembly sought, under the guise of a general law, to make a purely arbi-

trary classification of municipal corporations, assigning some cities
and towns to a class of communities made up largely of rural dis-
tricts, and assigning other municipal corporations of precisely the
same character to an altogether different class to be added to
or depleted at the legislative will by special enactment.    By a
general law, provision could constitutionally be made for the grant-
ing of liquor licenses in all rural districts where the sale of liquor
was authorized; such an exercise of police power could not be at-
tributed to any design to make an arbitrary distinction between
territory lying within the limits of a municipality and territory
lying adjacent to or remote from an incorporated town or city.
Where municipal government has been established and protection
against violence and lawlessness has been specially provided for,
conditions may be far different from those which prevail in
sparsely settled territory in the immediate vicinity, where ample
police protection against the evils resulting from intemperance
can hardly be provided.    So, also, a general law might be passed
to regulate the sale of liquor in all municipalities in the State,
or perhaps in all those having more than a given number of in-
habitants, or in all which naturally belong to a particular class
which for any substantial reason is distinguishable from another
class of cities or towns in which the same conditions do not exist.
But manifestly the General Assembly did not have in mind any
such logical scheme of classification, and it is much to be doubted
that our lawmakers have ever entertained the idea that it was
possible, by a statute operating alike throughout the entire limits
of this State, which has much territory and is peopled by a com-
munity divided in sentiment upon almost every question connected
with the liquor traffic, to deal with all the complexities which have
arisen out of the diversity of local opinion regarding the restric-
tions which should be placed upon the sale of intoxicating bev-
erages.

6. The constitutionality of the local act is further assailed on
the ground that it is antagonistic to paragraph 1, section 1,
article 3 of the constitution, which declares: "Laws of a general
nature shall have uniform operation throughout the State, and no
special law shall be enacted in any case for which provision has
been made by an existing general law;" in that the local act ap-
plies to all wines except those which are expressly excepted by sec-

tion 5 thereof (domestic wines made in Irwin county and wines for sacramental purposes), and so much of the act as applies to domestic wines other than those excepted constitutes a special law in a case for which provision has been made by general laws, to wit: the wine acts of 1877 and 1904. Acts of 1877, p. 33: Acts. of 1904, p. 98. The wine act of 1877 does not appear to have been codified in either of the codes adopted since its enactment, but its omission therefrom does not have the effect of repealing the act. The general scope of the wine act of 1877 is to make lawful the sale of domestic wines at wholesale and in quantities of not less than one quart, notwithstanding any provisions of law requiring a license or oath or other regulation or condition, prohibition or penalty, to the contrary. The wine act of 1904 confers upon the authorities of an incorporated town or city, within the limits of the town or city, and the commissioners of roads and revenues or ordinary (as the case may be) without the limits of all incorporated towns or cities, the power to grant license to the manufacturers of domestic wines made from grapes, berries, or fruits purchased by them or grown on lands owned, leased or rented by them, to retail the same in quantities not less than a quart, and not to be drunk on the premises where sold, and to fix the license at such price as these authorities may see proper. It would be foreign to the discussion of the point in hand to enter into any extended analysis of these two acts to determine whether they are conflicting in any wise or what effect the latter act may have on the first. This fact is worthy of note, that neither act is designed to operate on sales in quantities less than one quart. In *Papworth* v. *State,* 103 *Ga.* 36, it was held that domestic wines were intoxicating liquors, and that while the wine act of 1877 was of force the General Assembly could not constitutionally vary its provisions in any locality in Georgia by special legislation. This ruling was applied to the local act up for consideration in that case, which prohibited the sale of intoxicating liquors in a certain county. The local prohibitory act was held to be void because the legislative purpose was to *totally* prohibit the sale of intoxicating liquors in the county, and this could not be constitutionally done, because of the wine act of 1877. Other local prohibitory laws have been pronounced unconstitutional for the same reason. *Griffin* v. *Eaves,* 114 *Ga.* 65, and cit. In these cases the local prohibitory acts were

declared void, on the principle that the whole legislative scheme· was defeated by the unconstitutional feature of the special law. The local act before us, considered as a license regulation of in-toxicating liquors, has for its purpose the regulation of the sale of liquor and the raising of revenue for the county. If there had been no attempt to except domestic wines of any character, the· local act would not have been rendered unconstitutional because· of the wine act of 1877, for an intention will be imputed to the· legislature to enact local license laws only for the sale of such in-toxicating liquors as could not be lawfully sold without a license.. *Roberts* v. *State,* 114 *Ga.* 541.     This is in accord with a well. recognized rule of statutory construction.  See 1 Lewis' Suth. Stat. Con. § 298.  But the local act for Irwin county undertakes· to deal with the subject of putting a license fee upon sellers of domestic wines, and excepts only such wines as are made in the· county; so the act is in conflict with the general wine act of 1877. Attention is also called to the fact that the wine act of 1904 is a. general law, and the contention is urged that the local act con-flicts with its provisions, as it prohibits the license by county authorities of the sale of wine in quantities of not less than a quart,. and not to be drunk on the premises where sold, within the limits of an incorporated town.  Let this be granted; still it does not. follow that the whole legislative scheme is defeated, so that so· much of the act as is constitutional may not be enforced.  The purpose was to regulate the sale and impose a license tax, and not. to prohibit the sale altogether.  The license tax was laid upon the· sale of all kinds of intoxicating beverages except domestic wines. made in the county of Irwin and wines sold for sacramental pur-poses; and if, for any reason, the license can not be required of any seller who deals in wine exclusively, there is no reason for supposing the legislature would not have been willing to impose the restrictions upon the sale of other intoxicants unless all wines ex--cept as expressly provided should also come under those restric--tions.   To enforce so much of the local act as is constitutional will not, we are sure, defeat the general scheme which the legislature had in mind, but will give effect to that scheme, save as to matters. of minor importance which can be disassociated therefrom with-out doing violence to it.

7. It is further contended that the exception contained in the·

fifth section of the local act is discriminatory and excludes from its operation all wines except such as are made in the county of Irwin and wines sold for sacramental purposes, and is therefore an effort to regulate commerce among the several States, which is forbidden to the States by the constitution of the United States. The failure to include, within the exception of wines which might be sold without a license, wines made outside the State is a discrimination against wines made beyond the State. The effect, however, is not to render the act invalid, but to place all wines on the same basis, whether made within or without the State.

8. And lastly, it is contended that the evidence shows that the license fee is so large that it amounts to prohibition, and therefore the act contravenes the constitutional provision forbidding special legislation where there is an existing general law on the subject-matter, the general law being the local option liquor law. The presiding judge allowed the defendant to introduce evidence to support his special plea raising this point. Speaking for myself, I know of no principle of law which allows a legislative act to be declared unconstitutional by the finding of a jury or of the trial judge on the facts of a particular case. The constitutionality of an act is purely a question of law—a question of construction of the statute and the constitution, to ascertain agreement or conflict of the former with the latter. But as the propriety of this mode of attack on the constitutionality of the act is not under review, we will simply look to the evidence to see if it demanded a finding that a twenty-thousand-dollar license fee would necessarily amount to a total prohibition of the traffic. We do not think the evidence was such as to constrain such a finding of fact, and we can not reverse the judgment because the court reached the conclusion that the license fee was not prohibitory.

*Judgment affirmed. All the Justices concur.*