### 247.   ROSE *v.* THE STATE.

### 248.   ROSE COMPANY *v.* THE STATE.

1. Section 428 of the Penal Code, as amended by the act of 1897 (Acts 1897, p. 39), is by its terms made applicable only in those counties, cities, or other localities where the sale of spirituous, malt, or intoxicating liquors "is prohibited by law, high license or otherwise."

2. The sale of liquor is not "prohibited by law, high license or otherwise,"

in Bartow county. Therefore, an indictment in that county for an alleged violation of the said section as amended was invalid, and a conviction thereon was contrary to law, and must be set aside.

Indictment for unlawful sale of liquor, from Bartow superior court—Judge Fite. February 16, 1907.

Argued March 20,—Decided April 11, 1907.

*Rosser & Brandon, Ben. J. Conyers, Neel & Peeples,* for plaintiffs in error. *Sam. P. Maddox, solicitor-general,* contra.

HILL, C. J. In the superior court of Bartow county an indictment was returned against Randolph Rose, W. F. Baker, and R. M. Rose Company. The indictment contained two counts. The first charged a violation of section 431 of the Penal Code. The second charged a violation of section 428 of the Penal Code, as amended by the act of 1897 (Acts of 1897, p. 39). The defendants Randolph Rose and R. M. Rose Company interposed a demurrer to the second count, on the ground that it "does not allege a crime under the laws of this State, there being no law of force prohibiting, by high license or otherwise, the sale of liquors in Bartow county." The court overruled the demurrer, and the defendants excepted to that judgment. The court instructed the jury that there was no evidence that any spirituous, malt, or intoxicating liquors had been sold in Bartow county, and directed a verdict for the defendants on the first count in the indictment. The defendants were convicted on the second count of the indictment, and their motion for a new trial was overruled.

The controlling question in this case is made by the demurrer to the second count of the indictment. This count, as before stated, charged the defendants with a violation of section 428 of the Penal Code, as amended by the act of 1897. The offense is set forth in the language of the statute, it being alleged, that W. F. Baker, Randolph Rose, and R. M. Rose Company, in Bartow county on the 1st day of January, 1907, did "sell, contract to sell, take orders for, and solicit, personally and by agent, the sale of spirituous, malt, and intoxicating liquors in said county of Bartow, where the sale of such liquors is prohibited by law, high license or otherwise, said R. M. Rose Company being then and there a corporation doing business in this State, and said offense then and there having been committed within the corporate limits of the city of Cartersville, in the said county of Bartow." Was the sale of spirituous, malt, or in-

toxicating liquors prohibited by law, high license or otherwise, in Bartow county at the time when the offense charged was alleged to have been committed? If such sale was not prohibited in that county, it follows that the conviction, whatever may have been the facts in the case, was unlawful, and must be set aside.

By its express terms, section 428 of the Penal Code, before and since the amendatory act of 1897, makes it an offense, personally or by agent, to sell, contract to sell, take orders for, and solicit the sale of spirituous, malt, or intoxicating liquors, only in those counties in this State where the sale of such liquors is prohibited by law. Justice Cobb, in the case of *Barker* v. *State,* 117 *Ga.* 433, gives the legislative intent in the enactment of §428 as follows: "The manifest purpose of this law is to prevent the sale of intoxicating liquors in a prohibition county, town, or district." See, in the same connection, *Loeb* v. *State,* 115 *Ga.* 241 (2). The Supreme Court in *Strauss* v. *Mayor of Waycross,* 97 *Ga.* 476, says: "Prior to the passage of the act of December 18, 1893 [now section 428 of the Penal Code], soliciting orders for the sale of spirituous, malt, or other intoxicating liquors, in any 'prohibition' county in this State was not indictable under any criminal statute of Georgia, but was for the first time made a State offense by the passage of that act." Section 428 of the Penal Code was amended by the act of 1897, by inserting after the word "sell," in the second line, the words "contract to sell, take orders for." It is clear that the legislature of 1897 thought that this section applied only to those counties wherein the sale of liquor was then prohibited by law; for the caption of the amendatory act expressly restricted its application to "where the sale [of such liquors] is now prohibited by law." In the case of *Williams* v. *State,* 107 *Ga.* 694, the Supreme Court holds that "the purpose of the act [section 428 of the Penal Code, as amended by the act of December 9, 1897] is to prevent whisky-dealers from selling or contracting to sell, taking orders for, or soliciting, personally or by agent, the sale of intoxicating liquors in a 'dry' county, town, or district." The use of the word "dry" was intended to designate those counties where the sale of liquors is prohibited by law. It is unnecessary to multiply authorities on this point, for it can not be doubted that the plain, manifest purpose of section 428, as amended, was to protect from the liquor traffic those counties wherein the sale of liquors was prohibited by law, and that

this section is applicable only in those counties where the sale is prohibited. It therefore follows, that if there was no valid law which prohibited the sale of spirituous, malt, and intoxicating liquors in the county of Bartow at the time when the alleged offense was committed, there could have been no violation of section 428, as amended by the act of 1897, in that county; and an indictment based on that statute was invalid.

So the question recurs, was the sale of spirituous, malt, and intoxicating liquors prohibited by law, high license or otherwise, in Bartow county on January 1, 1907, or at any time prior to that date, within the statute of limitations? Let us review the legislation on the subject of the liquor question, as applicable to Bartow county. On February 26, 1875 (Acts 1875, p. 338), a local act was passed, permitting an election in Bartow county to determine the question "whether or not spirituous, vinous, or malt liquors shall be sold, bartered, or in any way disposed of for a valuable consideration, in quantities less than one gallon." No election was ever held under this act, and it never became operative. On February 21, 1876 (Acts 1876, p. 328), this act of 1875 was amended, but there was no election under the act as amended, and it never became effective. On December 2, 1884, a local act was passed entitled, "An act to submit to the qualified voters of Bartow county the question of the sale and furnishing of intoxicating, alcoholic, spirituous, vinous, or malt liquors in said county, and to prohibit the same from being sold or furnished after said election, if a majority of those voting shall so determine, and to provide penalties for such sale and furnishing, and for other purposes." This act was amended October 7, 1885, forbidding the sale of domestic wines at public places, and in quantities less than one quart. Acts of 1884-5, p. 541. An election was held under this act, and it received the number of votes necessary for its adoption, and became operative. On November 6, 1901, the Supreme Court, in the case of *Griffin* v. *Eaves,* 114 *Ga.* 65, following the principle ruled in *Papworth* v. *State,* 103 *Ga.* 36, and subsequent cases, declared that the special local act of 1884 for Bartow county was in conflict with the general domestic-wine act of February 27, 1887, and was violative of that clause of the constitution which prohibits special legislation in any case for which provision has been made by an existing general law. It was further decided in the same case that the

general statute making it an offense to retail or sell intoxicating liquor without license was .operative in Bartow county. Since the decision of the Supreme Court declaring the special local act of 1884-5 unconstitutional, this general law is the only one that has been of force in Bartow county. This law does not prohibit the sale of liquor. It permits the sale under a license granted by the proper county authorities. This is a regulation, and not a prohibition.

It seems perfectly clear to us that it would be a legal paradox and a logical absurdity to hold that section 431 of the Penal Code, which regulates, and section 428, which prohibits, can be effective and operative at the same time in the same county or locality. We do not understand the able solicitor-general to combat the correctness of this position. He claims, on the contrary, that section 428 does apply in Bartow county, because in .that county the sale of liquor is prohibited by law. He admits that such sale is not prohibited by high license, for high license does not necessarily prohibit. Neither does he claim that there is in that county any special prohibition law, or that the people of the county have prohibited the sale under the provisions of the general local-option law. He supports his contention that the sale is prohibited in Bartow county by the word "otherwise," used in the act of 1897,—"prohibited by law, high license or otherwise." He contends that the act of 1874 (Acts 1874, p. 330), creating the board of county commissioners for Bartow county, gives them exclusive jurisdiction to issue licenses for the sale of spirituous liquors in that county; that, having exclusive jurisdiction, the commissioners can refuse or grant licenses at their election; and that the fact that no license has been granted shows that the policy of the county is not to legalize the sale of liquors, and therefore the sale of spirituous liquors in that county is "otherwise prohibited by law," the "otherwise prohibited by law" consisting in the fact that the county commissioners have not granted a license to sell in the county. The syllogism of the solicitor-general proceeds in this wise: Exclusive jurisdiction is given to the county commissioners of Bartow county to grant or to refuse licenses for the sale of spirituous liquors in that county; they have not granted a license; therefore the sale of liquor is prohibited by law. The conclusion is a palpable non-sequitur from the premise. There may be many reasons for not having issued

a license. No one may have applied, or no one acceptable to the commissioners may have applied. Questions of policy or expediency may have induced the commissioners to refuse those who applied. But the power to license existed, and this precluded the possibility of prohibition. The commissioners were not authorized by law to prohibit the sale of spirituous liquors, but only to regulate the sale thereof. Regulation is absolutely contradictory of prohibition. The former can never exist where the latter prevails, or vice versa. Even regulation that places the license so high that it amounts to practical prohibition does not, as a matter of law, prohibit. *Glover* v. *State,* 126 *Ga.* 594. According to the Supreme Court, in *Griffin* v. *Eaves,* supra, the only penal law applicable to the sale of liquor in Bartow county is that contained in section 431 of the Penal Code, and this law could not be applicable in that county if the sale of liquor was prohibited. The truth of the proposition is self-evident, and argument seems superfluous.

The words "otherwise prohibited," relied on by the State, really mean nothing in this statute. When the legislature used the words "prohibited by law," it exhausted the subject, and the addition of the words "high license or otherwise" was "wasteful and ridiculous excess." These general words are sometimes added to specific enumeration in statutes out of abundance of caution, but they usually mean nothing. Certainly such words must be "restricted to the same genus as the things enumerated," and the use of the word "otherwise," following the words "prohibited by law," meant that the "otherwise" prohibition of the sale of liquor was to be a legal prohibition, that is, prohibited by the law of high license, or otherwise prohibited by law. But we do not think this general word means anything in this statute. Whatever it was intended to mean, it could not by any rule of logic give to the failure of the commissioners to grant licenses the force and effect of a positive enactment prohibiting the sale. The word "prohibit" is an active, transitive verb. As defined by the Standard Dictionary, it means "to forbid, especially by authority or legal enactment; interdict; as, to prohibit liquor-selling, or a person from selling liquor." The word "prohibit," in its legal sense, implies some legislative enactment forbidding something. "The laws of England, from the early Plantagenets, sternly prohibited the conversion of malt into alcohol." "Prohibition," in the United States, specifically means "the forbid-

ding by legislative enactment of the manufacture and sale of alcoholic liquors for use as beverage." Giving, therefore, to the word "prohibited" its ordinary signification and its technical meaning, as applied to the particular subject-matter of the sale of spirituous liquors, it must involve some positive act done by authority.

If the position of the solicitor-general is correct, there is no necessity for any general prohibition law in Georgia, and the general local-option law was an entirely useless piece of legislation. All that is necessary to secure prohibition in a county is to elect county officials who will arbitrarily and at all times refuse to grant licenses. This would put it in the power of one or more county officials to give or refuse prohibition to the people. This great question in which all the people are so much interested would not be under the control of positive statute, but of the caprice or honesty of a few individuals. If such were the law, a county might be "wet" one day, and "dry" the next. If the people of Bartow county want the traffic of spirituous liquors prohibited in their county, they must avail themselves of the provisions of the general local-option law of the State. The Supreme Court has repeatedly held that no special local law will give the protection, and surely the failure to grant licenses by the commissioners will not furnish such protection; for, at any time, the commissioners could change their minds and issue licenses.

We conclude that the sale of spirituous, malt, or intoxicating liquors was not prohibited by law, prohibited by high license, or prohibited otherwise, in Bartow county, when the plaintiffs in error were charged with a violation of section 428 of the Penal Code as amended by the act of 1897, and that the demurrer to the indictment on this ground should have been sustained. Let the judgment of the superior court, refusing to grant a new trial, be reversed, the verdict in both cases set aside, and the indictment quashed.

The petition of the solicitor-general to review the decision of the Supreme Court in the case of *Griffin* v. *Eaves,* 114 *Ga.* 65, is refused. The principle upon which that case was decided was approved by the Supreme Court in several cases before and since the decision of that case. As late as the case of *Glover* v. *State,* 126 *Ga.* 607, it was cited and approved. In the case of *Edwards* v. *State,* 123 *Ga.* 544, the Supreme Court cites with approval the prin-

ciple of the *Papworth* case, and all subsequent cases involving the same question. In view of these repeated rulings of the Supreme Court, this court is not of the opinion that the question is one of so much doubt that it should be referred to the Supreme Court for review.                                        *Judgment reversed.*